The TRAVELERS INSURANCE COMPANIES, Plaintiff–Appellant,

v.

Dale DICKEY, d/b/a Dale Dickey Roofing and Sheet Metal, a Nul Tiel Enterprise, Defendant–Appellee.

No. 70690.

Supreme Court of Oklahoma.

Oct. 16, 1990.

---

Mark T. Koss, Messrs. McNulty, Koss, Fulp & Bumgarner, Oklahoma City, for plaintiff-appellant.

Brad Smith, Messrs. Knowles, King and Smith, Tulsa, for defendant-appellee.

OPALA, Vice Chief Justice.

This certiorari petition tenders for review but two issues: 1) whether the roofing contractor (defendant at nisi prius), hired by the insured and alleged to have negligently caused damage to the latter's property, for which the insurer has paid, can be considered a co-insured whose status makes him immune from liability to the insurer on its subrogation claim and 2) whether the pre-loss mutual "waiver" of liability agreement between the contractor and the insured owner bars the insurer's

subrogation claim against the contractor. We answer both questions in the negative.

An owner of commercial property [owner or insured] hired the individual defendant, Dale Dickey, d/b/a Dale Dickey Roofing and Sheet Metal [contractor or roofer], to replace the roofs of several office buildings. One night, before the project was completed, rain penetrated through one of the roofs then under repair and damaged the interior. The Travelers Insurance Companies [insurer] paid the owner's loss and brought this action against the roofer, alleging the water damage was caused by his negligence.

In support of its claim the insurer's petition refers to the roofer's breach of contractual duty to make sure "the roofs are maintained in a 'dried in' or watertight condition at the end of each days [sic] work and/or when weather conditions dictate." Responsibility for the "acts and omissions" of the workers is expressly placed upon the contractor, who must "indemnify and hold harmless the Owner ... from and against all claims, damages, losses or expenses resulting from the performance of the Work."

The contractor, who denied liability, moved for summary judgment, arguing the insurer's subrogation claim is not actionable. The basis for this contention is twofold: a) the contractor should be treated as a co-insured, based on his "interest" in the property covered by the owner's insurance policy and b) the insurer's subrogation claim is barred by the owner/contractor agreement to "waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance."

When giving summary judgment for the contractor, the trial court ruled 1) the contractor is a "co-insured" under the owner's policy, 2) by the terms of the roofing contract the owner "waived" the right to enforce the liability in controversy and 3) the

owner's waiver is "permitted" by the insurance policy. The Court of Appeals affirmed. The latter court construed the terms of the policy *together with* the contract, concluding that since no right of recovery exists in the owner (insured), none could be pressed by the insurer. Upon the insurer's petition, certiorari was granted.

I.

## THE CONTRACTOR MAY *NOT* BE TREATED AS A CO-INSURED OF THE OWNER'S POLICY

■ A co-insured is immune from liability on an insurer's subrogation claim.[1] While the owner here is the named insured, the policy does not mention the individual roofer at all, let alone refer to him as an insured. The notion that he could be viewed as a co-insured has its source in that part of the construction contract which requires the owner to procure property insurance. The pertinent terms of the owner/roofer agreement provide:

"PROPERTY INSURANCE will be purchased and maintained by the Owner *covering the completed value of the Work.* Any loss will be adjusted with the Owner and made payable to the Owner as trustee for the Contractor. The Contractor shall be responsible for payment of the deductible amount in the event of a paid claim. *The Owner and Contractor waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance,* except for such rights as they may have to the proceeds of such insurance held by the Owner as trustee. The Contractor shall require similar waivers in favor of the Owener [sic] and Contractor by subcontractors and sub-subcontractors." (Emphasis added.)

---

1. *Sutton v. Jondahl, infra* note 6 at 482.

This insurer's claim against the roofer is founded upon the doctrine of equitable subrogation. Recovery is measured by no fixed rule of law. Subrogation is an equitable principle by which, based on the facts and circumstances in

each case, responsibility for a loss' payment or an obligation's discharge is ultimately placed upon the person who, in good conscience, ought to pay. *Republic Underwriters v. Fire Ins. Exchange,* Okl., 655 P.2d 544, 545–546 (1983).

The policy, which the owner purchased in fulfillment of its obligation to the roofer, covers among other things,

"1. A. *Any interest of the insured in all Real and Personal Property* owned, used, leased, managed or intended for use by the insured, or *hereafter constructed,* erected, installed, or acquired, *including during the course of construction, at described premises on file with this company,* erection, installation, or assembly. *In the event of loss or damage, this company will consider the insured as the sole and unconditional owner* of improvements and betterments, notwithstanding any contract or lease to the contrary; and

"B. Any interest of the insured in the Real and Personal Property of others and *the insured's liability imposed by law or assumed by contract for non-owned Real and Personal Property;* and

" * * *

"D. *Contractors' interest in property covered to the extent of the insured's liability imposed by law or assumed by written contract....*" (Emphasis added.)

As the trial court did before it, the Court of Appeals considered the quoted excerpts from the policy and from the roofing contract, concluding that the roofer should be treated as an insured because he had an interest in at least some of the property covered by the policy. The appellate court also viewed the roofing contract as manifesting the parties' intent to shield the contractor from liability for *any* loss covered by the owner's insurance. Our analysis of the materials in the record compels a different conclusion.

The modification of an insurance policy is governed generally by contract principles.[2] An insurer's undertaking *cannot* be altered or modified by an insured's agreement with a third party in the absence of the insurer's consent.[3] The roofing contract and the insurance policy in suit comprise *two distinct agreements* and give rise to two different and separate relationships.[4] The former establishes the owner-contractor relation; the latter, the insurer-insured bond. The roofing contract's requirement that the owner purchase insurance does not make the contractor a co-insured under the policy; neither does part 1(D) of the insurance policy (quoted above), which refers to "contractors' interest in property covered." Rather, as we view the quoted coverage, it affords the *owner* indemnity for a loss on the covered premises to property in which the contractor has an interest. In case of damage either to any of the *completed work* for which he has not yet been paid or to any of his tools or equipment, the roofer would be protected by the policy's coverage as a third-party beneficiary.[5]

**2.** *Christian v. Metropolitan Life Ins. Co.,* Okl., 566 P.2d 445, 448 (1977).

**3.** See *Liverpool & London & Globe Ins. Co. v. McLaughlin,* 70 Okl. 237, 174 P. 248 (1918) (the court's syllabus ¶ 1), where the insured was not bound by the insurer's change in the policy's terms without his consent; *Aetna Life Ins. Co. v. Wilson,* 190 Okl. 363, 123 P.2d 656 (1942) (the court's syllabus ¶ 1), where the court nullified a group insurance policy's modification made by the insurer and employer without the employee's consent; *Drummond v. Johnson,* Okl., 643 P.2d 634, 639 (1982), where the court held that a contract is binding upon, and enforceable by, only those who are parties to it.

**4.** See *Federal Ins. Co. v. Arthur Andersen & Co.,* 75 N.Y.2d 366, 553 N.Y.S.2d 291, 293, 552 N.E.2d 870, 872 (1990), where the court stated: "Unlike contractual subrogation where the subrogee's rights are defined in an express agreement between the insurer-subrogee and the insured-subrogor, *the rights of an insurer against a third party as equitable subrogee arise independently of any agreement....* These rights accrue upon payment of the loss and are based upon the principle that in equity an insurer, which has been compelled under its policy to pay a loss, ought in fairness to be reimbursed by the party which caused the loss...." (Citations omitted and emphasis added.)
See also, *Travelers Ins. v. L.V. French Tr. Serv.,* Okl., 770 P.2d 551, 555 n. 16 (1989).

**5.** See 15 O.S.1981 § 29, *infra; Franklin Casualty Insurance Company v. Jones,* Okl., 362 P.2d 964 (1961) (the court's syllabus) (before a third party may recover upon an agreement between others to which he is not a party, the contract must be made expressly and *intended* for his benefit); *Roach v. Atlas Life Ins. Co.,* Okl., 769 P.2d 158, 161 (1989) (a third-party beneficiary insurance contract exists if the proceeds are payable to a third person).

The contractor urges we should here follow the Court of Appeals' reasoning in *Sutton v. Jondahl*.[6] There, a landlord's insurer who sued the tenants claimed that the tenants' negligence caused the fire which damaged the rented premises. The court held the insurer's subrogation claim barred because the tenant, who had an insurable (possessory) interest in the damaged property, should be considered as a co-insured.[7] Although the *Sutton* facts might be perceived as somewhat similar to those in this case, we view the opinion as unpersuasive for clothing the roofer with the status of an insured and exonerating him from liability on the subrogation claim at bar. In *Sutton* the damage occurred to the tenants' dwelling itself, while here, there is *no allegation* that the loss in suit extends to any property *other than that owned, possessed and used solely by the named insured (owner)*.

The construction contract contains a provision, quoted in Part II of this opinion, requiring the *roofer* to secure *liability* coverage. It also requires the roofer to

"[s]ubmit a certificate of insurance showing such policy or policies, *with the Owner named as additional insured,* to Owner or Owner's agent prior to the start of construction operation." (Emphasis added.)

While this clause requires the roofer to include the *owner* as a co-insured under its *liability* policy, there is no reciprocal obligation that the roofer be made a co-insured of the owner's policy. In fact, the construction contract expressly charges the owner with the duty to act as trustee for the contractor in the event of a paid loss for any funds that may be due the latter under the owner/roofer contract.

■ We cannot divine from either the policy or the contract any intent to confer indemnity rights on the roofer. Rather, *it is the owner who stands protected from liability for loss to property situated on the covered premises in which the contractor may have an interest.* Although the construction contract makes the owner responsible for securing coverage for the *value of the work completed,* no one alleges that the harm in suit affected any part of the roofer's contractual performance and, in any event, neither the policy nor the contract directs that any proceeds be paid to the roofer. Had the *policy* expressed an intent to cover the roofer's property or to make him a loss payee[8] under its terms, he would be considered a co-insured or a third-party beneficiary.[9] But even in that instance his indemnity interest would shield him from subrogation liability *only to the extent* that the value of his property or of his completed and unpaid performance stood insured from loss. The principle of subrogation is to be *liberally applied* for the protection of its "natural beneficiaries."[10]

In short, assuming the roofer was a co-insured or a third-party beneficiary of the policy for indemnity against *some* losses, the attributes of that status would *not* afford him immunity from subrogation coextensive with the owner's *entire* coverage.[11] While subrogation would not be

---

The terms of 15 O.S.1981 § 29 provide:
"A contract, *made expressly for the benefit of a third person,* may be enforced by him at any time before the parties thereto rescind it." (Emphasis added.)

6. Okl.App., 532 P.2d 478 (1975).

7. *Sutton v. Jondahl, supra* note 6 at 482.

8. For an explanation of rights accorded to a loss payee, see *Willis v. Nowata Land and Cattle Co., Inc.,* Okl., 789 P.2d 1282, 1286 (1990); *Conner v. Northwestern Nat. Cas. Co.,* Okl., 774 P.2d 1055, 1056–1057 (1989).

9. See the authorities cited *supra* note 5.

10. *Federal Ins. Co. v. Arthur Andersen & Co., supra* 553 N.Y.S.2d note 4 at 294, 552 N.E.2d note 4 at 873.

11. See *Paul Tishman Co. v. Carney & Del Guidice, Inc.,* 36 A.D.2d 273, 320 N.Y.S.2d 396, 397 (1971), where the court held that the insurer, who paid a loss occasioned by fire in a building under construction, *may* pursue its subrogation claim against the defendant-subcontractor for negligence *even though* the policy covered the defendant's interest in work performed, because the defendant was not insured for liability to others and nothing in the record indicated that he had any interest in the damaged property; see also, Annot. Insurance: Subrogation of insurer compensating owner or contractor for loss under "builder's risk" policy against allegedly negligent contractor or subcontractor, 22 A.L.R.4th 701.

available for losses against which the roofer was legally protected by the policy, the casualty for which the instant claim was brought—negligence in allowing rain damage to penetrate into the building's interior—is not within the coverage afforded the roofer either as a co-insured or as the policy's third-party beneficiary.[12]

## II.

## THE ROOFING CONTRACT'S MUTUAL "WAIVER" CLAUSE DOES NOT SHIELD THE CONTRACTOR FROM THE LIABILITY SOUGHT TO BE IMPOSED BY THE INSURER

■ The second basis given for the summary judgment on review is, in essence, that the insurer has no subrogation right against the contractor, since its insured (the owner) had *waived* the right of recovery by the terms of the roofing contract's property insurance provision, quoted in Part I of this opinion. In that clause "[t]he Owner and Contractor [had agreed to] waive all rights against each other for damages caused by fire or other perils *to the extent covered by insurance....*" This part of the agreement is claimed to manifest the owner's and roofer's intent to shift the risk of liability for the loss in suit away from them and cast it upon the insurer alone. For the reasons to be explained we reject this notion.

The insurer's brief correctly points out that the mutual waiver clause is found in the paragraph that makes the owner responsible for procuring coverage *only* for "*the completed value of the [roofing] work.*" The roofing contract deals *not with allocating liability for the owner's water damaged interior*, but holds each party harmless for those *losses of the other which are connected with the work performed.* The agreement clearly is ineffective to exonerate the contractor from liability for negligently inflicted harm to

the *owner's interior property*. To conclude otherwise would render meaningless the roofing contract's explicit terms requiring the contractor to purchase *liability* insurance. That part of the contract provides as follows:

"CONTRACTOR'S LIABILITY INSURANCE shall be purchased and maintained by the Contractor *to protect against damage claims arising out of the Contractor's operations under this Contract,* whether by the Contractor, any subcontractor or anyone directly or indirectly employed by any of them. * * * " (Emphasis added.)

Both the trial court and the Court of Appeals ruled that the contract's waiver provision is "permitted" by the following terms of the insurance policy:

"6. COMPANY'S RIGHT OF RECOVERY: In the event of any payment under this policy, the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure the subrogation rights of the Company. *The Insured shall do nothing to prejudice such rights except that:*

\* \* \* \* \* \*

(c) *Any release from liability,* other than as provided above, *entered into prior to loss hereunder by the Insured shall not affect this policy or the right of the Insured to recover hereunder.*" (Emphasis added.)

Even if we concede the mutual waiver clause is applicable to the loss in suit, the insurer cannot be held to have condoned the contractor's release from accountability. Part 6(c) of the policy clearly operates to *preserve the insured's rights under the policy* despite any prior-to-loss "release" the insured may have signed. There is nothing in the policy that authorizes the insured to destroy the insurer's subrogation rights.[13] Nay, the quoted provision in clause 6 *explicitly requires* the insured to do all that is necessary to preserve those

---

12. The roofer has paid the owner the full amount of the policy's deductible. We express no opinion on that payment's impact or effect, if any, upon the roofer's liability to the insurer.

13. The following general provisions of the policy pertain to "Release and Subrogation." They

contain the *insurer's* waiver of its right of subrogation against *only the insured (owner).*

"... Any release from liability entered into by the insured prior to loss hereunder shall not affect this policy or the right of the insured to recover hereunder. *The right of subrogation against the insured is waived.*

rights and to abstain from doing anything that may adversely affect them.[14] Indeed, the owner did sign a "subrogation receipt" by which the insurer's payment of the loss was acknowledged, and all the owner's rights against any other party were assigned to the insurer.

In sum, this subrogation claim calls upon the contractor to respond in damages for negligently exposing the interior of the owner's building to damage occasioned by the penetration of rain. We hold that a waiver of the liability in suit is not reasonably inferable from the construction contract and that the owner's policy does not make the roofer either a co-insured or a third-party beneficiary for the risk that resulted in the loss for which the insurer's claim is asserted.[15] The summary judgment against the insurer cannot stand.

THE COURT OF APPEALS' OPINION IS VACATED; THE TRIAL COURT'S SUMMARY JUDGMENT AGAINST THE INSURER IS REVERSED; CAUSE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS PRONOUNCEMENT.

HARGRAVE, C.J., and HODGES, LAVENDER, SIMMS, DOOLIN, ALMA WILSON and SUMMERS, JJ., concur.

KAUGER, J., concurs in result.

"In the event of any payment under this policy, *this company shall be subrogated to the extent of such payment to all the insured's rights of recovery therefor.* The insured shall execute all papers required and shall act in concert with all other interest [sic] concerned, i.e., the insured and any other company(ies) participating in the payment of any loss of primary or excess insurers, in the exercise of such rights of recovery. If any amount is recovered after deducting the costs of recovery, it shall be divided between the interests concerned in the proportion of their respective interest. If there should be no recovery, the expense of proceedings shall be borne proportionately by the company(ies) instituting the proceedings.
"It is agreed that the insured, after the occurrence of a loss, may waive the insured's right to recovery against a tenant of any proper-

ty(ies) covered under this policy provided that the company shall be subrogated to any partial rights of recovery retained by the insured." (Emphasis added.)

14. An insurer's subrogation rights may be destroyed by an insured who releases a wrongdoer from liability *before* payment of the loss has been made by the insurer. *Porter v. MFA Mut. Ins. Co.,* Okl., 643 P.2d 302, 305 (1982); *Uptegraft v. Home Ins. Co.,* Okl., 662 P.2d 681, 686–687 (1983).

15. Today's pronouncement does *not* hold that the insurer's subrogation claim could have lain had the owner expressly or impliedly waived its right of recovery against the roofer for damage to the building's interior occasioned by the roofer's negligence.