2000 OK CIV APP 10

Delbert Glenn REDNOUR, Jr., Plaintiff/Appellant,

v.

JC & P PARTNERSHIP, d/b/a Hampton Woods Capitol Investors, Defendant,

and

Acceptance Insurance Company, Defendant/Appellee.

No. 92,673.

Court of Civil Appeals of Oklahoma, Division No. 1.

Nov. 5, 1999.

Certiorari Denied Jan. 11, 2000.

Roger R. Williams, Donald B. Bolt, III, Williams & Bolt, Tulsa, Oklahoma, For Plaintiff/Appellant.

Ray Wilburn, Wilburn, Masterson & Smiling, Tulsa, Oklahoma, For Defendant/Appellee.

## OPINION

ADAMS, Judge:

¶ 1 After he was injured in a fall in the common area of Hampton Woods Apartments, which were owned and operated by JC & P Partnership, d/b/a Hampton Woods Capitol Investor (Insured), Delbert Glenn Rednour, Jr. (Rednour) asked Acceptance Insurance Company (Insurer) to pay medical expenses incurred as a result of that fall under the medical expenses provision of the Businessowner Liability insurance policy issued by Insurer to Insured. When Insurer did not pay those expenses as quickly as Rednour believed was appropriate, he filed an action against Insured for negligence and against Insurer for breach of the duty of good faith and fair dealing (the bad faith claim) and requested actual and punitive damages.

¶ 2 Insurer filed a summary judgment motion, admitting that Rednour was entitled to payments under the medical expenses provision, but arguing, *inter alia*, that it had no duty of good faith and fair dealing to him

because he was not a party to the insurance policy issued to Insured. Following a response from Rednour and additional briefing by both parties, the trial court concluded that, as a matter of law, Rednour could not bring the bad faith claim against Insurer because he lacked the proper status *vis a vis* the contract under Oklahoma law. Accordingly, the trial court granted Insurer's motion and entered judgment in favor of Insurer against Rednour on the bad faith claim.[1]

¶ 3 The material facts are undisputed. The controversy in this case turns on the legal question whether Rednour, whose injuries are undisputedly covered by the medical expenses provision of Insured's liability policy, may bring an action against Insurer for breach of its implied duty of good faith and fair dealing. This precise issue has never been addressed by our courts. However, other cases involving insurance proceeds lead us to conclude that we must focus on the contracting parties' primary intent in order to determine if Insurer had a duty of good faith and fair dealing toward Rednour.

¶ 4 *Roach v. Atlas Life Insurance Company*, 1989 OK 27, 769 P.2d 158, required the Court to consider whether a named beneficiary of a life insurance contract might have a bad faith claim against the life insurer. Holding that such a claim was possible, the Court specifically rejected the argument urged here by Rednour that because the insurance proceeds were payable directly to him under the medical expenses provision, he could pursue a bad faith claim. According to *Roach*, 1989 OK 27, ¶ 8, 769 P.2d at 161, "the insurer's duty to deal fairly and act in good faith is limited. It does not extend to every party entitled to payment from insurance proceeds. There must be either a contractual or statutory relationship between the insurer and the party asserting the bad faith claim before the duty arises."

---

1. The trial court made the express findings required by 12 O.S.Supp.1995 § 994(A) in order to make its order final. However, because the trial court's order limited summary adjudication to the bad faith claim, including Rednour's request for punitive damages, and it was unclear whether Rednour also was seeking recovery under the terms of the insurance contract, this Court ordered him to show cause why this appeal should not be dismissed as premature. In his response to the order, Rednour stated that his only claim was for bad faith, including punitive damages, which was resolved by the trial court's order.

¶ 5 *Roach* also applied the provisions of what is now 15 O.S.1991 § 29 and determined that the life insurance contract was made "expressly" for the benefit of the beneficiary and was therefore enforceable by the beneficiary. Most significantly, the Court concluded that "[t]he failure to afford a cause of action for bad faith to the beneficiary of a life insurance policy would negate a substantial reason for the insured's purchase of the policy—the peace of mind and security which it provides in the event of loss." *Roach,* 1989 OK 27, ¶ 10, 769 P.2d at 162.

¶ 6 *Gianfillippo v. Northland Casualty Company,* 1993 OK 125, ¶ 10, 861 P.2d 308, 309, reinforced *Roach's* holding that the insured's reason for purchasing the insurance policy determines if the required contractual relationship exists, *not* the entitlement to payment of insurance proceeds.

> Third-party beneficiary status was found in *Roach v. Atlas Insurance Company.* There, the named beneficiary in a life insurance policy was allowed to pursue a bad faith claim against the insured [sic]. But Walker's [driver] insurance policy was not made for the express benefit of Gianfillippo [passenger]. The policy was intended for the protection of the insured. It benefitted Gianfillippo only incidentally. Gianfillippo was merely a third-party claimant who lacked standing to bring a bad faith claim.

¶ 7 Despite the fact that the motor vehicle liability policy covered Gianfillippo's injuries as a passenger in an insured vehicle, her entitlement to those insurance proceeds did not give her the contractual relationship required by *Roach* to bring a bad faith action. Instead, to make that determination, the *Gianfillippo* Court, applying § 29, considered only the insured's intent for purchasing the liability policy.

¶ 8 This approach is also consistent with cases interpreting § 29. Applying § 29 to decide whether the future homeowners were third-party beneficiaries and could enforce the contract between the builder and an architect, *Keel v. Titan Construction Corporation,* 1981 OK 148, ¶ 5, 639 P.2d 1228, 1231, held:

It is not necessary that the party be specifically named as a beneficiary but only that the contract be made "expressly for the benefit of a third person" and "expressly" simply means "in an express manner; in direct or unmistakeable [sic] terms; explicitly; definitely; directly." ... It is the intention of the parties to the contract as reflected in the contract which must provide the answer to the question of whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts. (Citations omitted).

¶ 9 *Townsend v. State Farm Mutual Automobile Insurance,* 1993 OK 119, 860 P.2d 236, upon which Rednour relies, is also consistent with this approach. The Court concluded Townsend, who was covered by the insured driver's uninsured motorist policy as a occupant in an insured vehicle, had both a statutory and contractual relationship with the insurer. Their basis for the "contractual relationship" was that "Penn, the named insured, purchased protection from uninsured motorists for himself, for family members, for permissive users, and for passengers. This gave rise to a legitimate contractual expectation that the insurer would act in good faith and deal fairly with all insureds, whether they were of a class 1 or class 2." *Townsend,* 1993 OK 119, ¶ 10, 860 P.2d at 238.

¶ 10 The primary purpose of an uninsured motorist provision in an insurance contract is to protect the insured from the effects of personal injury resulting from an accident with another motorist who carries no insurance or is underinsured; it is a promise by the insurer to pay its own insured, rather than a third party. *Uptegraft v. The Home Insurance Company,* 1983 OK 41, 662 P.2d 681. In that regard, its purpose vis a vis the party who will ultimately receive the proceeds of the insurance is similar to life insurance, making sure that there is compensation for loss to the injured party.

¶ 11 The purpose behind a business premises liability policy, of which this medical expenses provision was a part, is markedly different. Unlike the owner of an automobile who would normally have personal,

family or social reasons for wishing to provide uninsured motorist protection for passengers in an automobile, the primary purpose behind a business owner's purchase of liability insurance is the protection of assets. Medical expense provisions in such policies principally serve that goal by reducing the likelihood of further litigation through the prompt payment of medical expenses of parties injured on the premises without the necessity of them suing the business owner and proving negligence.

■ ¶ 12 Considering the policy under which Rednour seeks to impose a duty on Insurer, we must conclude that the primary purpose was to provide protection to the Insured from damage claims, and parties such as Rednour only incidentally benefit from a provision which is primarily designed to avoid more extensive claims by reducing injured parties' motivation for bringing a lawsuit. Rednour cannot be considered a third-party beneficiary of the policy for purposes of enforcing a bad faith claim.

■ ¶ 13 Similarly, we must reject Rednour's belated claim that he can assert a bad faith claim as an insured because a portion of his rental payment to Insured must be treated as contributing to the premium paid by Insured for the policy.[2] In *Sutton v. Jondahl*, 1975 OK CIV APP 2, 532 P.2d 478, the case upon which Rednour relies for this argument, the Court concluded that a tenant was a "co-insured" for purposes of an insurance claim for fire damage to the rented property which the insurer alleged the tenant had negligently caused. Applying equitable principles, the Court concluded the insurer was barred from seeking subrogation against the tenant, similar to the bar which would have arisen had the insurer sought recovery from the landlord for negligence. As noted in *Travelers Insurance Companies v. Dickey*, 1990 OK 109, 799 P.2d 625, it was the tenant's insurable interest in the property damaged which gave rise to the equitable principle that barred the insurer's subrogation claim in *Sutton*. *Sutton* does not speak to a bad faith claim and has no application here.

2. Rednour did not raise this argument until he filed a motion to reconsider after the trial court

¶ 14 The trial court correctly concluded that the undisputed facts demonstrated that Insurer had no duty of good faith and fair dealing toward Rednour under Oklahoma law. The trial court's judgment is affirmed.

¶ 15 AFFIRMED

¶ 16 HANSEN, P.J., dissents; JONES, C.J., concurs.