**HANOVER INSURANCE COMPANY and Wolf Point Industrial Warehouse, Inc., Plaintiff,**

v.

**HONEYWELL, INC., and Circle International, Inc., Defendants.**

**T.L.C. International, Inc., Plaintiff,**

v.

**Circle International, Inc., a/k/a and/or d/b/a Circle International Group, Inc., EGL, Inc., Wolf Point Industrial Warehouse, Inc., a/k/a and/or d/b/a Wolf Creek Industrial Warehouse, Inc., Tulsa Properties, Inc., Fleming Building Company, Inc., and Honeywell, Inc., Defendants.**

Nos. 00CV0584H(J), 01CV0152H(E).

United States District Court,
N.D. Oklahoma.

April 24, 2002.

Brian Russell Huddleston, Carr & Carr, Tulsa, OK, Dennis Duane King, King Taylor & Ryan, Tulsa, OK, Jennifer L. Duncan, William T. Sebesta, Cozen & O'Connor, Dallas, TX, for Wolf Point Industrial Warehouse, Inc., plaintiff, counter-defendant, Massachusetts Bay Ins. Co., plaintiff.

Brian Russell Huddleston, Carr & Carr, Tulsa, OK, Dennis Duane King, Ashley Melissa Bibb, King Taylor & Ryan, Tulsa, OK, Jennifer L. Duncan, William T. Sebesta, Cozen & O'Connor, Dallas, TX, for Wolf Point Industrial Warehouse, Inc., counter-defendant.

Daniel David Draper, III, Rhodes Hieronymus Jones Tucker & Gable, Tulsa, OK, Keith A Wilkes, Newton O'Connor, Turner & Auer, Tulsa, OK, William Suttle Leach, Eldridge Cooper Steichen & Leach, PLLC, Tulsa, OK, for Circle International, Inc., defendant, cross-defendant, cross-claimant, counter-claimant.

Daniel David Draper, III, Rhodes Hieronymus Jones Tucker & Gable, Tulsa, OK, William Suttle Leach, Eldridge Cooper Steichen & Leach, PLLC, Tulsa, OK, for EGL, Inc., cross-defendant, cross-claimant, consolidated defendant, Circle International, Inc., consolidated defendant, cross-defendant, cross-claimant.

Harry Anthony Parrish, John F McCormick, Jr., Gregory Jon Crawford, Kaycee Lyn Deen, Pray Walker Jackman Williamson & Marlar, Tulsa, OK, Brendan M Hare, Kathleen A Kelley, Hare & Chaffin, Boston, MA, William J George, Wayzata,

MN, for Honeywell, Inc., cross-defendant & consolidated cross-defendant, consolidated defendant, cross-claimant.

Harry Anthony Parrish, John F McCormick, Jr., Kaycee Lyn Deen, Pray Walker Jackman Williamson & Marlar, Tulsa, OK, Brendan M Hare, Kathleen A Kelley, Hare & Chaffin, Boston, MA, William J George, Wayzata, MN, for Honeywell, Inc., cross-claimant.

Gregory Jon Crawford, Kaycee Lyn Deen, Pray Walker Jackman Williamson & Marlar, Tulsa, OK, William J George, Wayzata, MN, for Honeywell, Inc., cross-claimant, cross-defendant.

Mark Alan Warman, Wilkerson Wassall & Warman, Tulsa, OK, Christopher N Hug, Glenda Ganem, McGovern Hug & Ganem, Boston, MA, for T.L.C. International, Inc., consolidated plaintiff, counter-defendant.

Dennis Duane King, Neil D Van Dalsem, King Taylor & Ryan, Tulsa, OK, for Wolf Point Industrial Warehouse, Inc., cross-defendant, cross-claimant, counter-claimant.

Dennis Duane King, King Taylor & Ryan, Tulsa, OK, Paul R. Williams, III, Tulsa, OK, for Tulsa Properties, Inc., consolidated defendant, cross-defendant.

Dennis Duane King, Ashley Melissa Bibb, King Taylor & Ryan, Tulsa, OK, Paul R. Williams, III, Tulsa, OK, for Tulsa Properties, Inc., cross-defendant.

## ORDER

HOLMES, District Judge.

This matter came before the Court for hearing on April 11, 2002, upon Defendant Circle International, Inc.'s ("Circle") First Motion for Summary Judgment Against Hanover Insurance Company and Massachusetts Bay Insurance Company.[1] For the reasons set forth herein, the Court finds that Circle's motion should be granted.

## FACTS

This case arises out of a March 6, 1999 fire in a Tulsa warehouse building owned by Plaintiff/Co–Defendant Wolf Point Industrial Warehouse, Inc. ("Wolf Point"), and leased by Circle for commercial warehousing purposes. Prior to September 8, 1998, Circle had leased and occupied only a portion of the Wolf Point building, approximately one-fourth to one-third of the entire facility. However, on September 8, 1998, Circle and Wolf Point entered into a new commercial lease agreement for the entire building.

The terms of the commercial lease included a provision whereby Wolf Point agreed "to insure the Leased Premises for fire, casualty, and public liability."[2] Wolf Point obtained Hanobusiness Policy No. ODT 5168314–03 ("Hanover Policy") from Plaintiff. The Hanover Policy provided coverage to the building structure in the

---

1. Pursuant to this Court's October 18, 2001 Order, Plaintiff was allowed to file its October 26, 2001 First Amended Complaint substituting Massachusetts Bay Insurance Company, a wholly-owned subsidiary of Hanover, in lieu of Hanover as the named Plaintiff. For purposes of this Order, Massachusetts Bay and Hanover are collectively referred to herein as "Plaintiff".

2. **"Landlord's Insurance.** Landlord agrees to insure the Leased Premises for fire, casualty, and public liability. In the event that Ten-

ant's occupancy or use of the Leased Premises results in any increase in cost of Landlord's fire and casualty or public liability insurance, Tenant shall reimburse Landlord for such increase as additional rent. Further, if cost of Landlord's fire and casualty or public liability insurance increases above base year rate during the term of the lease, a proportionate share of such increase shall be paid by Tenant, or if a single Tenant, Tenant shall pay total increase." Commercial Lease Agreement, § 8(d).

amount of $359,000.00, as well as loss of business income coverage for actual business losses not exceeding twelve (12) consecutive months. The terms of the Hanover Policy included a subrogation provision wherein the rights of Hanover's insured, Wolf Point, would be transferred to Hanover upon Hanover's payment of a covered claim under the Hanover Policy. The subrogation provision also provided that Wolf Point could waive its rights, and consequently, Hanover's subrogation rights, against another party in writing prior to a loss to the covered property.

On or about March 6, 1999, the entire building owned by Wolf Point and leased to Circle was destroyed by fire. Pursuant to Wolf Point's claim under the Hanover Policy, Plaintiff paid Wolf Point $348,090.00 as reimbursement for Wolf Point's damages to the structure and $20,963.46 as reimbursement for Wolf Point's lost business income. In total, Plaintiff paid Wolf Point $369,053.46 in losses arising out of the subject fire. Plaintiff, via its alleged right of subrogation, now seeks $369,053.46 in damages from Circle, Wolf Point's tenant, for the sums paid by Plaintiff to Wolf Point to rebuild the structure and for Wolf Point's business income losses.

Circle filed its motion for summary judgment alleging two propositions: (1) Plaintiff's subrogation claims fail as a matter of law, as Circle, Wolf Point's tenant, was an implied co-insured under the Hanover Policy; and (2) Wolf Point waived Plaintiff's subrogation rights in writing pursuant to the insurance provision contained in the commercial lease agreement, ¶ 8(d). *See* note 2, *supra.* For the reasons set forth herein, Circle is entitled to summary judgment pursuant to Proposition I of Circle's motion. For that reason, the issues set forth in Proposition II of Circle's brief need not be addressed and are deemed moot.

## STANDARD FOR SUMMARY JUDGMENT

Motions for summary judgment should be granted if the movant clearly establishes that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. *Lambert v. Inryco, Inc.,* 569 F.Supp. 908, 912 (W.D.Okla.1980). If the issue is purely a question of law, it is appropriate for the Court to dismiss the claim if no genuine issue of fact remains. *Bethel v. American Intern. Mfg. Corp.,* 768 F.Supp. 327, 328 (W.D.Okla.1991). A court may dismiss a complaint if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

A court should grant summary judgment if no genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law governing the suit dictates which facts are material or not. *Id.* at 248, 106 S.Ct. 2505. "Only disputes over facts that might affect the outcome of the suit under the governing law will . . . preclude summary judgment." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## SUBROGATION IS NOT AVAILABLE TO PLAINTIFF AGAINST WOLF POINT'S TENANT, CIRCLE.

Subrogation is the equitable right of an insurer to be put in the position of its insured so that it may pursue recovery from any third parties who are legally

responsible to the insured for a loss paid by the insurer. 16 Couch on Insurance § 222:5 (Rev.3rd ed.2000). The subrogated insurer "stands in the shoes of an insured, and has no greater rights than the insured...." *Id.* However, "[a] co-insured is immune from liability on an insurer's subrogation claim." *Travelers Ins. Cos. v. Dickey,* 799 P.2d 625, 627 (Okla.1990).

In *Sutton v. Jondahl,* 532 P.2d 478 (Okla.App.1975), the Oklahoma Court of Appeals concluded that a tenant was a co-insured under the lessor/landlord's insurance policy despite the fact that the tenant was not a named insured under the policy. In *Sutton,* a landlord's fire insurance carrier sued the tenant under claim of subrogation to recover damages caused to the structure by a fire allegedly started by the tenant's 10 year old son. Similar to Plaintiff's claims in the present case, the insurer claimed the tenant was negligent in allegedly contributing to the cause of the fire. *See Id.,* 532 P.2d at 479. Upon the tenant's appeal of a jury verdict in favor of the insurer, the Oklahoma Court of Appeals, reversed holding that, if the landlord had procured fire insurance coverage for the leased property, the tenant was a co-insured under the landlord's policy and that no subrogation could lie against the co-insured tenant absent an "express agreement" to the contrary, stating:

> Under the facts and circumstances in this record the subrogation should not be available to the insurance carrier because the law considers the tenant as a co-insured of the landlord absent an express agreement between them to the contrary, comparable to the permissive-user feature of automobile insurance. This principle is derived from a recognition of a relational reality, namely, that both landlord and tenant have an insurable interest in the rented premises— the former owns the fee and the latter has a possessory interest. Here the landlords (Suttons) purchased the fire

insurance from Central Mutual Insurance Company to protect such interests in the property against loss from fire. This is not uncommon. And as a matter of sound business practice the premium paid had to be considered in establishing the rent rate on the rental unit. Such premium was chargeable against the rent as an overhead or operating expense. And of course it follows then that the tenant actually paid the premium as part of the monthly rental.

The landlords of course could have held out for an agreement that the tenant would furnish fire insurance on the premises. But they did not. They elected to themselves purchase the coverage. To suggest the fire insurance does not extend to the insurable interest of an occupying tenant is to ignore the realities of urban apartment and single-family dwelling renting. Prospective tenants ordinarily rely upon the owner of the dwelling to provide fire protection for the realty (as distinguished from personal property) absent an express agreement otherwise. Certainly it would not likely occur to a reasonably prudent tenant that the premises were without fire insurance protection or if there was such protection it did not inure to his benefit and that he would need to take out another fire policy to protect himself from any loss during his occupancy. Perhaps this comes about because the companies themselves have accepted coverage of a tenant as a natural thing. Otherwise their insurance salesmen would have long ago made such need a matter of common knowledge by promoting the sale to tenants of a second fire insurance policy to cover the real estate.

Basic equity and fundamental justice upon which the equitable doctrine of subrogation is established requires that when fire insurance is provided for a dwelling it protects the insurable inter-

ests of all joint owners including the possessory interests of a tenant absent an express agreement by the latter to the contrary. The company affording such coverage should not be allowed to shift a fire loss to an occupying tenant even if the latter negligently caused it. *New Hampshire Ins. Co. v. Ballard Wade, Inc.*, 17 Utah 2d 86, 404 P.2d 674 (1965). A parallel effect was reached in *Hardware Mut. Ins. Co. v. Dunwoody*, 194 F.2d 666 (9th Cir.1952). For to conclude otherwise is to shift the insurable risk assumed by the insurance company from it to the tenant—a party occupying a substantially different position from that of a fire-causing third party not in privity with the insured landlord. *Sutton*, 532 P.2d at 482. *See also, Tate v. Trialco Scrap, Inc.*, 745 F.Supp. 458, 473 (M.D.Tenn.1989), *aff'd* 908 F.2d 974, 1990 WL 98032 (6th Cir.1990).[3] The Oklahoma Court of Appeals, re-affirming *Sutton*, has again recently precluded a lessor's insurer from asserting a subrogation claim against

the tenant in *Kansas City Fire & Marine Ins. Co. v. Rogers*, 871 P.2d 443 (Okla.App. 1994) (reversing and remanding case for entry of judgment in favor of tenant; citing *Sutton* and multiple other jurisdictions[4] precluding subrogation against tenant). *See also*, 49 Am.Jur.2d Landlord and Tenant § 481 ("As to fire insurance, the trend has been to find that the insurance has been obtained for the mutual benefit of a landlord and lessee. If a landlord has agreed to carry the insurance for the benefit of both parties, the subrogated insurer may not sue the tenant for fire damage resulting from the tenant's negligence."). Circle contends that, pursuant to *Sutton*, Circle is a co-insured under the Hanover Policy and that Plaintiff cannot seek subrogation against Circle. Plaintiff contends that *Sutton* should not apply in a commercial lease context or in a commercial landlord/tenant relationship. Plaintiff contends that both *Sutton* and *Rogers*, *supra*, involved residential leases as opposed to commercial leases, and that

**3.** "\*\*\* If the parties agree that one person shall purchase insurance, it is only natural that they assume that the insurance is for their mutual benefit and that the parties will look only to the insurance for loss coverage. Otherwise, there is no reason to put the insurance clause within the lease. It would be mere surplusage. And the natural expectation of the parties is that each lease provision has meaning.

The realities of who ultimately pays for the insurance also support adoption of this rule. Despite the fact that the lessor may actually send the premium check to the insurance company, the lessee ultimately pays for the insurance through his rent checks, because the lessor takes his own costs into account when setting rent. If the lessee is ultimately the source of the insurance payment, simple equity would suggest that he be able to benefit from that payment unless he has clearly bargained away his benefit. Subrogation being an equitable doctrine, it is only appropriate to consider this equitable factor in determining whether or not subrogation is appropriate in

this instance. Likewise, this fits with the natural expectations of the parties since it is logical for parties to expect to benefit from what they pay for." *Tate*, 745 F.Supp. at 473. For a multi-jurisdictional in depth analysis regarding preclusion of subrogation against both commercial and residential tenants by a lessor's insurer, *see Tate*, 745 F.Supp. at 467–75.

**4.** "These jurisdictions have adopted this view. *See, e.g., Alaska Ins. Co. v. RCA Alaska Communications, Inc.*, 623 P.2d 1216 (Alaska 1981); *Liberty Mutual Fire Ins. Co. v. Auto Spring Supply Co.*, 59 Cal.App.3d 860, 131 Cal.Rptr. 211 (1976); *Safeco Ins. Cos. v. Weisgerber*, 115 Idaho 428, 767 P.2d 271 (1989); *Reeder v. Reeder*, 217 Neb. 120, 348 N.W.2d 832 (1984); *Safeco Ins. Co. v. Capri*, 101 Nev. 429, 705 P.2d 659 (1985); *Fashion Place Inv. Ltd. v. Salt Lake County Mental Health*, 776 P.2d 941 (Utah App.1989); *Monterey Corp. v. Hart*, 216 Va. 843, 224 S.E.2d 142 (1976); *Cascade Trailer Court v. Beeson*, 50 Wash.App. 678, 749 P.2d 761 (1988)." *Rogers*, 871 P.2d at 443 n. 3.

no Oklahoma court has specifically recognized *Sutton* as applicable in a commercial lease setting. Plaintiff cites *Travelers Ins. Cos. v. Dickey*, 799 P.2d 625 (Okla.1990), in support of Plaintiff's contention that *Sutton* does not apply to a commercial landlord/tenant relationship. Plaintiff's contention is unavailing.

In *Travelers*, the Oklahoma Supreme Court was asked whether or not a third-party roofing contractor, hired by the insured owner of commercial property and alleged to have negligently caused damage to the property, could be considered an implied co-insured under the owner's policy—thereby precluding a subrogation claim against the roofing contractor. *Travelers*, 799 P.2d at 626. The Court ruled that the third-party roofing contractor who had no interest in the insured property, could not use *Sutton* to avoid suit by the property owner's subrogating insurer, stating:

> The contractor urges we should here follow the Court of Appeals' reasoning in *Sutton v. Jondahl.* There, a landlord's insurer who sued the tenants claimed that the tenants' negligence caused the fire which damaged the rented premises. The court held the insurer's subrogation claim barred because the tenant, who had an insurable (possessory) interest in

the damaged property, should be considered as a co-insured. Although the *Sutton* facts might be perceived as somewhat similar to those in this case, we view the opinion as unpersuasive for clothing a roofer with the status of an insured and exonerating him from liability on the subrogation claim at bar. In *Sutton* the damage occurred to the tenants' dwelling itself, while here, there is no allegation that the loss in suit extends to any property other than that owned, possessed and used solely by the named insured (owner).

*Travelers*, 799 P.2d at 629 (footnotes omitted). Contrary to Plaintiff's assertion, *Travelers* did not distinguish between commercial and residential leases concerning the applicability of *Sutton* and did not rule or suggest that *Sutton* may be inapplicable in a commercial lease setting.[5] *Travelers* is distinguishable and inapplicable from the present case, as Circle—the tenant—held an insurable possessory interest in the subject property at the time of the loss, whereas the third-party contractor in *Travelers* did not.

██ Plaintiff likewise contends that the indemnity provision[6] in the commercial lease agreement entered into between Circle and Wolf Point constitutes an "express agreement" to the contrary as contemplat-

---

**5.** The Court also notes *Weeks v. Oklahoma Natural Gas Co.*, 676 P.2d 272 (Okla.App. 1983), which could be read as expanding *Sutton* to a commercial context: "Of course, were she a tenant she would not be liable to the landlord if the action were for the enforcement of subrogation rights by or for the benefit of the landlord's insurance carrier. *Sutton v. Jondahl*, Okl.App., 532 P.2d 478 (1975)." *Id.*, at 279 n. 4.

**6.** "**Indemnity, Liability, and Loss or Damage.** Tenant agrees to defend, indemnity, and hold Landlord harmless from any loss, cost, or expense, whatsoever, resulting from (1) personal injury, loss of life, or loss of property relating to the use and occupancy by Tenant, or (2) from damage to, or destruction of, the

Project structure, or any part thereof, or of any abutting real property caused by, or attributable to, the negligent act or acts, or omission or omissions to act, of Tenant, or caused by, or attributable to, the Tenant's failure to perform its obligations under this Lease. Likewise, Landlord agrees to defend, indemnify, and hold Tenant harmless from any loss, whatsoever, resulting from personal injury, loss of life or property relating to the use of Landlord and use and occupancy by other Tenants, or caused by, or attributable to the negligent act or acts, omission or omissions to act, of Landlord, or caused by, or attributable to, Landlord's failure to perform its obligations under this Lease." Commercial Lease Agreement, ¶ 8(b)..

ed in *Sutton*, entitling Plaintiff to assert its subrogation claim against Circle. Plaintiff's contention is unavailing.

*Sutton* holds that both the landlord and tenant are co-insureds absent an "express agreement" to the contrary. *Sutton*, 532 P.2d at 482; *see also Tate*, 745 F.Supp. 458 (M.D.Tenn.1989) (concluding that "an agreement for the lessor to purchase insurance will be presumed to be for the mutual benefit of both parties unless there is a clear expression of contrary intent."). The word "express" means:

> [c]lear; definite; explicit; plain; direct; unmistakable; not dubious or ambiguous. Declared in terms; set forth in words. Directly and distinctly stated. Made known distinctly and explicitly, and not left to inference.

Black's Law Dictionary (6th Ed.1990). Reviewing the commercial lease, it has an indemnity provision, but it does not in any way refer to subrogation rights or include other language expressly placing the burden upon Circle to buy its own fire insurance. The words "subrogate" or "subrogation" are not contained in the indemnity provision, or anywhere else in the commercial lease agreement in regard to Plaintiff's

right of subrogation against Wolf Point's tenant, Circle. Nowhere in the commercial lease agreement is subrogation addressed or discussed. The Court rules that the indemnity provision relied upon by Plaintiff does not constitute an "express agreement" to the contrary as contemplated in *Sutton*. Consequently, Plaintiff cannot seek subrogation against Wolf Point's tenant, Circle.

The logic underlying *Sutton* is jointly shared possessory interests and ownership interests in the subject property which are all comprehensively insured by the same policy. The indemnity provisions cited by Plaintiff may be express about indemnity generally, but they are not of the nature of the "express" provisions contemplated by *Sutton*. Because Plaintiff insured the property for fire, the joint property interests of Wolf Point (fee ownership) and Circle (possessory) were both insured. As a matter of law and equity, Circle was a co-insured in this situation notwithstanding that Circle was not expressly identified as an insured in the Hanover Policy and, pursuant to *Sutton*, equitable subrogation is not available against Plaintiff's co-insured. *See Sutton*, 532 P.2d at 482.[7]

---

7. *See also, Aetna Ins. Co. v. Craftwall of Idaho, Inc.*, 757 F.2d 1030, 1034 (9th Cir.1985) ("Furthermore, to hold a tenant liable would encourage multiple insurance policies on the same building by the landlord and each of his tenants. In addition, courts have noticed that permitting a subrogation action would give insurers a windfall, since '[f]ire insurers expect to pay fire losses for negligent fires and their rates are calculated upon that basis.' "); *Commercial Union Ins. Co. v. North American Paper Co.*, 138 F.Supp.2d 222 (D.Mass.2001) (disregarding subrogating insurer's attempts to limit implied coinsured doctrine to residential contracts and granting summary judgment to tenant); *United Fire & Cas. Co. v. Bruggeman*, 505 N.W.2d 87 (Minn.App.1993) (tenants were co-insureds under landlord's fire insurance policy, and thus were not subject to subrogation action by insurer after fire loss allegedly caused by tenant's negligence);

*Sandoro v. Harlem–Genesee Market & Nursery, Inc.*, 105 A.D.2d 1103, 482 N.Y.S.2d 165 (1984) (real property lessors had no cause of action on behalf of subrogated fire insurers for loss due to negligence of sublessees); *Agra–By–Products, Inc. v. Agway, Inc.*, 347 N.W.2d 142 (N.D.1984) (insurance provisions in lease protected lessee from subrogation claims); *Parsons Mfg. Corp., Inc. v. Superior Court of San Mateo County*, 156 Cal.App.3d 1151, 1161–62, 203 Cal.Rptr. 419 (Cal.Ct.App. 1984) (*quoting Rizzuto v. Morris*, 22 Wash. App. 951, 592 P.2d 688, 690 (1979) ("First, it would be an undue hardship to require a tenant to insure against his own negligence when he is paying, through rent, for the fire insurance which covers the premises in favor of the lessor. Second, insurance companies expect to pay their insureds for negligently caused fire, and they adjust their rates accordingly. In this context, an insurer should

## Conclusion

The principle underlying *Sutton* is joint possessory and ownership interests shared by a landlord and its tenant, which are all insured by the same policy absent an "express agreement" to the contrary. Pursuant to *Sutton* and for the reasons set forth herein, the Court GRANTS Circle's motion for summary judgment on Plaintiff's claims seeking $369,053.46 in subrogated damages. Circle's second proposition in its motion regarding waiver of subrogation is moot.

**IT IS SO ORDERED.**

not be allowed to treat a tenant, who is in privity with the insured landlord, as a negligent third party when it could not collect against its own insured had the insured negligently caused the fire. In effect, the tenant stands in the shoes of the insured landlord for the limited purpose of defeating a subrogation claim. Third, the ordinary and usual meaning of 'loss by fire' includes fires of negligent origin. A reasonable businessman or woman contracting as a lessee would understand that the term exempts him or her from liability for all fires covered by the usual fire insurance policy.")); *Cartee v. Weber*, 397 N.E.2d 622 (Ind.App.1979) (fire insurer who paid policy benefits to insured landlord for damages to rental property could not recover damages from tenant by way of subrogation).