Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Integrand Assurance Company<br><br>    Peticionaria<br><br>         v.<br><br>Codeco, Cigna Insurance Co., Jonh Doe, Richard Doe, Compañía de Seguros X, Y y Z<br><br>    Recurridos<br><br>Marcelino Fernández Corp., Newport Cold Storage, Inc., Food Services, Inc., Frozens, Inc., Fronda, Inc.<br><br>    Demandantes-Interventores y Apelantes, ahora Apelada<br><br>         v.<br><br>Integrand Assurance Co., Codeco (hoy Promoexport) y Cigna Insurance Company (hoy Ace Insurance Co.)<br><br>    Demandados-intervenidos y Apelante la Segunda, ahora Apelada y Apelante la primera | Certiorari<br><br>2012 TSPR 59<br><br>185 DPR \_\_\_\_ |
| Integrand Assurance Company<br><br>    Recurrido<br><br>        v.<br><br>Codeco, Cigna Insurance Co., Jonh Doe, Richard Doe, Compañía de Seguros X, Y y Z<br><br>    Peticionarios<br><br>Marcelino Fernández Corp., Newport Cold Storage, Inc., Food Services, Inc., Frozens, Inc., Fronda, Inc.<br><br>    Demandantes-Interventores y Peticionarios<br><br>         v.<br><br>Integrand Assurance Co., Codeco (hoy Promoexport) y Cigna Insurance Company (hoy Ace Insurance Co.)<br><br>    Demandados-intervenidos y Peticionarios | |

Número del Caso: AC-2010-98
                  Cons. CC-2010-1027


Fecha: 28 de marzo de 2012


Tribunal de Apelaciones:

         Región Judicial de San Juan


Abogado de la Parte Peticionaria:

         Lcdo. Edwin Bonilla Vélez


Abogados de la Parte Recurrida:

         Lcdo. Edgardo Rosario Madera
         Lcda. Carmen Muñoz Noya
         Lcdo. Francisco Colón
         Lcdo. Héctor Cuebas


Materia: Seguros – Doctrina de la antisubrogación; doctrina de la indemnización completa


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Integrand Assurance Company<br>        Peticionaria<br><br>            v.<br><br>Codeco, Cigna Insruance Co., Jonh<br>Doe, Richard Doe, Compañía de<br>Seguros X, Y y Z<br>            Recurridos<br>_____<br>Marcelino Fernández Corp., Newport<br>Cold Storage, Inc., Food Services,<br>Inc., Frozens, Inc., Fronda, Inc.<br>    Demandantes-Interventores y<br>      Apelantes, ahora Apelada<br><br>            v.<br><br>Integrand  Assurance  Co.,  Codeco<br>(hoy Promoexport) y Cigna Insurance<br>Company (hoy Ace Insurance Co.)<br> Demandados-intervenidos y Apelante<br>     la Segunda, ahora Apelada y<br>        Apelante la primera | AC-2010-98<br><br><br><br><br><br><br><br>cons. con |
| Integrand Assurance Company<br>           Recurrido<br><br>            v.<br><br>Codeco, Cigna Insruance Co., Jonh<br>Doe, Richard Doe, Compañía de<br>Seguros X, Y y Z<br>           Peticionarios<br>_____<br>Marcelino Fernández Corp., Newport<br>Cold Storage, Inc., Food Services,<br>Inc., Frozens, Inc., Fronda, Inc.<br>    Demandantes-Interventores y<br>           Peticionarios<br><br>            v.<br><br>Integrand  Assurance  Co.,  Codeco<br>(hoy Promoexport) y Cigna Insurance<br>Company (hoy Ace Insurance Co.)<br>     Demandados-intervenidos y<br>           Peticionarios | CC-2010-1027 |

Opinión del Tribunal emitida por la Jueza Asociada señora FIOL MATTA


En San Juan, a 28 de marzo de 2012.

Se cuestiona en este recurso si la doctrina de la anti-subrogación, que le niega a una aseguradora el derecho a subrogarse contra su propio asegurado, tiene cabida en nuestro ordenamiento jurídico. Si resolvemos en la afirmativa, tenemos que precisar los contornos de dicha doctrina y su aplicación a los hechos particulares de este caso. De igual forma, debemos resolver si tiene cabida en nuestro ordenamiento la doctrina de la indemnización completa, que impide que una aseguradora subrogada recupere del tercero causante del daño lo pagado a la víctima, antes de que se haya indemnizado totalmente a ésta. Por último, los hechos particulares de este caso nos requieren determinar los efectos que puede tener una transacción sobre el derecho de la aseguradora de recuperar sus gastos cuando el asegurado y el tercero causante de los daños pactan sin la participación de la aseguradora.

I.

El 7 de marzo de 1984, el Grupo Marcelino suscribió un contrato de arrendamiento de varios espacios de almacenamiento pertenecientes a la Compañía de Desarrollo Comercial de Puerto Rico (CODECO).[1] El 15 de julio de 1993,

---

[1] El Grupo Marcelino es el nombre colectivo dado a varias personas jurídicas y naturales: Marcelino Fernández Corp., Newport Cold Storage, Inc., Maya Food Services Inc.,

la aseguradora Integrand emitió una póliza múltiple comercial ("*commercial package policy*") a favor del Grupo Marcelino. Dicha póliza incluía varias cubiertas, entre ellas, una póliza de propiedad comercial ("*commercial property coverage plan*") y otra de responsabilidad comercial general ("*general commercial liability coverage plan*"). Mediante la primera, Integrand aseguraría la propiedad comercial del Grupo Marcelino en caso de sufrir daños a causa de terceros. Mediante la segunda, la aseguradora respondería, en ciertas circunstancias, en caso de que el Grupo Marcelino causara daños a terceras personas. La póliza permitía la inclusión de asegurados adicionales si éstos eran añadidos mediante endosos, los que podían corresponder a la póliza entera o a algunas de las cubiertas particulares dentro del plan. La póliza distinguía entre el Endoso A, que incluía los llamados asegurados nombrados ("*named insured*") quienes estarían cubiertos por la totalidad de la póliza y el Endoso B, que permitía incluir asegurados adicionales ("*additional insured*") pero solamente en cuanto a la cubierta de responsabilidad comercial general. El Grupo Marcelino añadió a CODECO como asegurado adicional bajo el Endoso B.

El 21 de mayo de 1994, el techo del edificio comercial arrendado por CODECO (hoy Promo Export) al Grupo Marcelino se desplomó y destruyó un congelador industrial en cuyo

---

Frozens, Inc., Fronda, Inc., el señor Marcelino Fernández Conde y su sucesión.

interior había un inventario considerable de carnes y mariscos propiedad del segundo. Producto de la póliza de seguro vigente, Integrand pagó al Grupo Marcelino la cantidad de $596,595.[2] En virtud de una cláusula de subrogación establecida en la póliza, el 8 de junio de 1995, Integrand presentó una demanda contra CODECO y su aseguradora Cigna (hoy ACE), alegando que la pérdida del inventario del Grupo Marcelino se debió a la negligencia de CODECO.[3] El 17 de noviembre de 1995, la aseguradora de CODECO contestó la demanda y negó las alegaciones ahí contenidas. De igual forma, Cigna alegó que la parte demandante no tenía prueba de la alegada negligencia de CODECO y presentó una reconvención contra Integrand por la

---

[2] Esta cantidad responde a $494,095 producto de los daños a la mercancía directamente y $32,500 al Fireman's Fund Insurance.

[3] Integrand Assurance v. CODECO, KDP 1995-518 (Tribunal de Primera Instancia). Integrand se reservó el derecho a enmendar la demanda en caso de que tuviera que efectuar algún pago adicional a favor del Grupo Marcelino. La cláusula de subrogación dispone así:

> If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing: (1) Prior to a loss to your Covered Property or Covered Income; (2) After a loss to your Covered Property [or] Covered Income only if, at time of loss, that is one of the following: (a) Someone insured by this insurance; (b) A business firm: (i) Owned or controlled by you; or (ii) That owns or controls you; or (iii) Your tenant. This will not restrict your insurance.

supuesta negligencia del Grupo Marcelino. El 15 de febrero de 1996, CODECO contestó la demanda y presentó alegaciones similares a las de su aseguradora.

De otra parte, el Grupo Marcelino y otras personas naturales presentaron una demanda contra CODECO por incumplimiento de contrato y daños y perjuicios.[4] En esa demanda, el Grupo Marcelino reclamó por la pérdida directa al inventario, que calculó en $893,577.60, la pérdida de ingresos y operaciones de negocios, que calculó en $7,446,997.00 y otros daños calculados en $81,343.87.[5] Como segunda causa de acción, el Grupo Marcelino reclamó a CODECO por los daños sufridos debido a que otro congelador arrendado sufrió desperfectos. Como tercera causa de acción, el Grupo Marcelino alegó que las actuaciones de la parte demandada pusieron en peligro su acreditación por la U.S.D.A., reclamando el pago de $1,000,000. Ambas demandas fueron consolidadas y se nombró un Comisionado Especial para recibir la prueba.

---

[4] Marcelino Fernández Corp. v. CODECO, KAC 1995-638 (Tribunal de Primera Instancia).

[5] Las personas naturales co-demandantes en el caso también reclamaron daños y perjuicios ascendentes a $500,000 cada uno. La cantidad que Integrand pagó a Grupo Marcelino ($494,095), que fue por concepto de la pérdida al inventario, sería restada del total reclamado en caso de que el Grupo Marcelino resultase victorioso en su pleito. Las razones por las cuales Integrand no pagó la totalidad de la pérdida por dicho concepto no están ante nuestra consideración. De igual forma, tampoco está ante nuestra consideración la controversia entre el Grupo Marcelino e Integrand con relación a la reclamación sometida bajo la póliza de pérdida de ingreso ("business interruption").

Durante la tramitación del pleito, el Grupo Marcelino inició conversaciones transaccionales con CODECO y ACE (previamente Cigna) sin la presencia de Integrand y sin que ésta supiese de las mismas. Dichas conversaciones produjeron un Acuerdo Confidencial de Transacción que tampoco incluyó a Integrand. Mediante dicho acuerdo, el Grupo Marcelino desistió voluntariamente de su demanda en el caso KAC 1995-638 a cambio del pago de $4,000,000. De esa cantidad, los demandados retuvieron $560,000 en caso de que tuviesen alguna responsabilidad frente a Integrand en el caso KDP 1995-518.

El 25 de septiembre de 2006, el Tribunal de Primera Instancia aprobó el desistimiento con perjuicio del primer caso. Acto seguido, el Grupo Marcelino solicitó intervención en el caso KDP 1995-518 alegando que Integrand no tenía derecho a subrogarse en su lugar contra CODECO, por lo que procedía la desestimación del pleito. De igual forma, solicitó que se le entregaran los $560,000 retenidos por ACE y CODECO producto del acuerdo transaccional.[6] En su alegato, el Grupo Marcelino sostuvo que CODECO era un asegurado adicional de Integrand en la póliza emitida por ésta. Por tanto, arguyó que la aseguradora no podía incoar una demanda

---

[6] Según el acuerdo transaccional, ACE no podía disponer de dichos fondos sin el consentimiento escrito del Grupo Marcelino y sólo podía pagar cuando: (1) Integrand obtuviese sentencia final y firme a su favor, (2) se llegase a un acuerdo transaccional con el consentimiento previo del Grupo Marcelino, o (3) se desestimase el caso de manera final y firme. De haber un balance al finalizar la controversia, dicha cantidad sería entregada al Grupo Marcelino.

de subrogación contra CODECO por impedírselo el "*antisubrogation rule*" o doctrina de la anti-subrogación.[7] Mientras tanto, el 8 de agosto de 2007, el Grupo Marcelino envió una carta a Integrand renunciando a su derecho de reclamarle a CODECO. Para ello se basó en una disposición de la póliza múltiple que permitía al asegurado renunciar al derecho de subrogación de la aseguradora en dos circunstancias: (1) si la renuncia ocurría antes de que la aseguradora emitiera algún pago, o (2) si se trataba de una renuncia a favor de un co-asegurado bajo la "póliza".[8]

El 25 de noviembre de 2008, más de catorce años después que sucedieron los eventos que dieron inicio a esta controversia, el foro primario dictó sentencia declarando con lugar la demanda de subrogación presentada por Integrand. Como consecuencia, ordenó a CODECO y ACE a pagar $526,595 del dinero retenido conforme al acuerdo transaccional, más el 6% en intereses y costas. También ordenó al Grupo Marcelino pagar $3,500 en honorarios.

Inconforme, el Grupo Marcelino recurrió al Tribunal de Apelaciones y alegó la comisión de tres errores. En primer lugar, alegó que Integrand no tenía una causa de acción de

---

[7] Sentencia del Tribunal de Apelaciones, p. 10. Posterior a la intervención del Grupo Marcelino, Integrand solicitó copia del acuerdo transaccional. El Tribunal de Primera Instancia declaró con lugar dicha solicitud, determinación que fue confirmada por el Tribunal de Apelaciones y que advino final y firme tras una denegatoria de este Tribunal de expedir un auto de *certiorari*.

[8] También permitía renunciar si era a favor de un tercero que era una subsidiaria o la matriz del asegurado renunciante, o si era su inquilino. Véase nota 3.

la cual valerse. Esto, porque al ser CODECO un co-asegurado adicional bajo la póliza de responsabilidad comercial general, aplicaba la doctrina de la anti-subrogación. Adujo, además, que el Grupo Marcelino había renunciado a los derechos de subrogación de Integrand en la carta del 8 de agosto. En segundo lugar, el Grupo Marcelino alegó que, aunque procediera la demanda de subrogación, tanto el artículo 1167 del Código Civil como la doctrina conocida como "*make whole doctrine*" impiden que un acreedor subrogado recupere su acreencia antes de que se haya indemnizado totalmente a la víctima original del daño causado. En tercer lugar, el Grupo Marcelino planteó que el foro primario erró al no celebrar un juicio plenario para determinar la responsabilidad de la parte demandada y los daños sufridos. En vez, el Tribunal de Primera Instancia dispuso de la controversia por la vía sumaria, al resolver que no había controversia real sobre la negligencia de CODECO, ya que dicha negligencia era la base del acuerdo transaccional que culminó en la desestimación de uno de los pleitos originales.

En una extensa y bien fundamentada sentencia, el Tribunal de Apelaciones confirmó en parte la decisión del Tribunal de Primera Instancia. En cuanto a la doctrina de la anti-subrogación, el foro apelativo resolvió que ésta no aplica a los hechos del caso, coincidiendo así con la sala de instancia. Según ambos foros, para que aplique la doctrina de la anti-subrogación en casos de co-asegurados

hace falta que ambos estén cubiertos por la _misma_ póliza en cuyo concepto se realizó el pago. Por tanto, como el pago hecho por Integrand fue bajo la póliza de propiedad comercial y CODECO era un asegurado adicional en la póliza de responsabilidad comercial general, el Tribunal concluyó que no cabía recurrir a la anti-subrogación.[9]

El Tribunal de Apelaciones discutió con detenimiento esta doctrina. Según el foro intermedio, un asegurador no tiene derecho a subrogarse en contra de su propio asegurado o co-asegurado, "porque la subrogación sólo puede existir respecto a los derechos de una aseguradora en contra de terceras personas con las cuales no tenga obligación alguna".[10] El foro apelativo señaló que en la mayoría de las jurisdicciones de los Estados Unidos, la doctrina de la anti-subrogación sólo aplica cuando el demandado es un asegurado "bajo la misma cubierta que da origen al derecho de subrogación",[11] mientras que en otras jurisdicciones se ha adoptado una definición más amplia de dicha figura "para incluir a cualquiera que esté asegurado por la misma

---

[9] El Grupo Marcelino alegó que lo fundamental era determinar si Integrand _pudo_ haber emitido el pago a su favor por concepto de la cubierta de responsabilidad comercial general en vez de la de propiedad comercial. No obstante, los foros inferiores correctamente determinaron que la póliza de responsabilidad comercial general no cubría el tipo de pérdida sufrida por el Grupo Marcelino, por lo cual no era necesario entrar en dicho asunto.

[10] Sentencia del Tribunal de Apelaciones, pp. 22-23.

[11] _Id_, p. 23.

aseguradora, incluso bajo cubiertas distintas".[12] Acogiendo la tendencia mayoritaria, el Tribunal de Apelaciones resolvió que la doctrina de la anti-subrogación no aplica en este caso.[13]

Además, el foro apelativo determinó que la renuncia al derecho de subrogación que hizo el Grupo Marcelino por medio de la carta del 8 de agosto no privó a Integrand de su derecho a presentar una demanda de subrogación. Resolvió, en primer lugar, que el Grupo Marcelino tenía que renunciar a dicho derecho antes de que Integrand ejerciera su derecho a la subrogación, mientras que la renuncia tuvo lugar después de que Integrand le advirtiera al responsable del daño que habría de hacer efectiva la acción de subrogación. En segundo lugar, el foro intermedio resolvió que no se dieron los requisitos establecidos en la póliza para poder renunciar a la subrogación después de haberse ejercido el derecho de subrogación porque para ello hacía falta, en lo pertinente, que el causante del daño fuese un asegurado bajo la misma póliza. Habiéndose resuelto que CODECO no era un co-asegurado bajo la póliza de propiedad comercial, el Tribunal de Apelaciones determinó que el Grupo Marcelino no podía renunciar al derecho de subrogación después que Integrand presentó su acción. Por tanto, concluyó que no se cometió el primer error señalado.

---

[12] *Id.*

[13] De igual forma, el foro apelativo concluyó que se trataba de una defensa afirmativa que se renunció al no presentarse oportunamente.

En cuanto al segundo señalamiento de error, el Tribunal de Apelaciones discutió la doctrina de la indemnización completa (*"make whole doctrine"*) que, según explicó, "impide a una aseguradora invocar su derecho a la subrogación antes de que el asegurado reciba una compensación completa por su pérdida" con miras a evitar que la compensación del asegurado pueda reducirse mediante la subrogación de la aseguradora.[14] Según el Grupo Marcelino, su derecho a ser indemnizado por la totalidad de los daños sufridos, antes de que la aseguradora pueda subrogarse, es superior al de ésta y le faculta a recibir los $560,000 retenidos por ACE. Plantea que ello es así porque Integrand aún no ha emitido pago relacionado con la interrupción de negocios; además, lo pagado por concepto de la póliza de propiedad comercial fue menor que los daños efectivamente sufridos y Grupo Marcelino sufrió otros daños que no fueron cubiertos por Integrand.

El foro apelativo concluyó que en nuestro sistema, el objetivo de la doctrina de la indemnización completa está contemplado en la preferencia concedida en el Artículo 1167 del Código Civil al acreedor a quien se hubiere hecho un pago parcial.[15] Sin embargo, la doctrina no aplica en un caso como éste, en el que hay reclamaciones distintas, una sobre propiedad comercial e interrupción de negocios y otra sobre daños independientes, algunos de los cuales no estaban cubiertos por la aseguradora. De igual manera, dado que

---

[14] Sentencia del Tribunal de Apelaciones, p. 34.

[15] 31 L.P.R.A. sec. 3251.

Integrand pagó por concepto de la pérdida del inventario hasta los límites de la póliza, el tribunal apelativo determinó que no se podía catalogar su pago por ese concepto como "parcial".

Finalmente, el Tribunal de Apelaciones revocó al Tribunal de Primera Instancia al entender que no procedía dictar sentencia de manera sumaria, ya que los demandados habían negado la negligencia al contestar la demanda y no se desprendía del acuerdo transaccional que hubo una admisión de negligencia.[16] Por tanto, devolvió el caso al foro primario para la celebración de un juicio plenario en cuanto la alegada negligencia de CODECO y el posible vínculo causal con los daños producto del desplome del techo.

Tanto Integrand como el Grupo Marcelino y CODECO recurren ante este Tribunal cuestionando la sentencia del foro apelativo. Como único error, Integrand alega que procedía la disposición sumaria del pleito, pues en el acuerdo de transacción entre ACE, CODECO y el Grupo Marcelino, se reconoció la negligencia de CODECO.[17] Por su parte, el Grupo Marcelino y CODECO reiteran los errores planteados ante el Tribunal de Apelaciones. En primer lugar, alegan que la doctrina de la anti-subrogación es cónsona con

---

[16] Esta determinación fue hecha en Reconsideración, ya que en su Sentencia original el Tribunal de Apelaciones había confirmado la Sentencia de la sala de instancia en todos sus extremos. Sentencia del 30 de septiembre de 2010.

[17] También alega que la conducta del Grupo Marcelino ha tenido como objetivo frustrar su derecho a la subrogación y que ha habido colusión entre éste y CODECO para evitar que recupere los pagos realizados.

nuestro ordenamiento y que una correcta aplicación de la misma resulta en que Integrand no puede subrogarse contra CODECO por ser éste un co-asegurado bajo el contrato de seguro.[18] En segundo lugar, alegan que la doctrina de la indemnización completa recogida en el artículo 1167 del Código Civil aplica en este caso a pesar de que hubo una transacción en el pleito presentado por el Grupo Marcelino.

En cuanto a la doctrina de la anti-subrogación, CODECO y el Grupo Marcelino sostienen que, por consideraciones de orden público, no debe permitirse que por subrogación convencional una aseguradora pueda recobrar de un asegurado los pagos hechos a favor de otro co-asegurado. Es decir, que Integrand "sólo podía subrogarse en contra de un tercero causante del daño que sea ajeno al contrato de seguro".[19] De esta manera, sostienen, se protegen efectivamente los intereses del asegurado. También alegan que la interpretación del Tribunal de Apelaciones en cuanto al alcance de la doctrina de la anti-subrogación es demasiado estrecha y debe ampliarse para incluir a co-asegurados que no estén bajo la misma cubierta por la que se emitió el pago. Según el Grupo Marcelino y CODECO, "el criterio

---

[18] Esta alegación tiene varias manifestaciones. Primero, que se trata de una única póliza que contiene varias cubiertas y que al CODECO ser asegurado adicional bajo la cubierta de responsabilidad comercial general, eso lo convierte en un co-asegurado para efectos de la totalidad de la póliza. Segundo, sostienen que debe aplicarse una definición amplia de la doctrina de la anti-subrogación en caso de que se entienda que se trata de pólizas distintas.

[19] Petición de *certiorari*, p. 3.

determinante para la aplicación de la doctrina de la anti-subrogación es que la acción de subrogación esté basada en riesgos o pérdidas para los cuales el causante del daño está cubierto bajo la póliza, independientemente del tipo de cubierta que origina el pago".[20] Por eso, exponen que tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones erraron al determinar que se trataba de múltiples pólizas dentro de un plan integral y que era necesario precisar bajo cuál de las pólizas se emitió el pago, en vez de múltiples cubiertas dentro de una misma póliza. Por su parte, Integrand propone que los "tratadistas y la jurisprudencia reconocen que la doctrina no aplica cuando el tercero que causó el daño no está asegurado para el riesgo o pérdida bajo la cual se pagó y se inicia la acción de subrogación".[21]

CODECO y el Grupo Marcelino también se reafirman en que ellos renunciaron formalmente al derecho de Integrand a subrogarse, por lo cual ésta carece de una causa de acción.[22] Igualmente, ofrecen una interrogante adicional: si el daño causado por CODECO a la propiedad del Grupo Marcelino está cubierto por la póliza de responsabilidad comercial general de la cual CODECO es un asegurado adicional. En otras palabras, si Integrand estaría obligado

---

[20] Petición de *certiorari*, p. 21.

[21] Alegato de Integrand, p. 21.

[22] Esta alegación se basa tanto en la naturaleza general del derecho de subrogación como en el mecanismo de renuncia establecido por la póliza.

a pagarse a sí mismo en caso de ganar su pleito contra CODECO por tratarse de un acto negligente cubierto por la póliza de la cual éste es un asegurado adicional. Finalmente, alegan que la aplicación de la doctrina de la indemnización completa evita que Integrand sea indemnizada por sus gastos hasta tanto el Grupo Marcelino no sea compensado por la totalidad de los daños sufridos.

El 15 de abril de 2011 expedimos el auto de *ceritiorari* solicitado por CODECO y el Grupo Marcelino, y lo consolidamos con la apelación presentada por Integrand, que también acogimos como *certiorari*. Ambas partes han comparecido y estamos en posición de resolver.

II.

Mediante un contrato de seguros "una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo".[23] En estos contratos se transfiere el riesgo a la aseguradora, cuya obligación de responder por los daños económicos sufridos por el asegurado surge si ocurre dicho suceso.[24] En caso de que el daño se materialice y se deba a las actuaciones culposas o negligentes de un tercero, la aseguradora, una vez emita el pago a favor de su asegurado, le sustituye y podrá reclamarle a dicho tercero

---

[23] Artículo 1.020 del Código de Seguros, 26 L.P.R.A. § 102. Véase Coop. Seguros Múltiples v. Carlo, 2011 T.S.P.R. 99 en la pág. 4, 182 D.P.R. ___ (2011); Coop. Seguros Múltiples de P.R. v. Lugo, 136 D.P.R. 203, 209 (1994).

[24] Coop. Seguros Múltiples v. Carlo, *supra*, pp. 4-5.

por los daños causados. Es decir, surge el derecho de la aseguradora de subrogarse en la posición de su asegurado con relación a todas las acciones y remedios a los cuales éste tiene derecho y puede recuperar de esos terceros causantes del daño la cantidad que en concepto de indemnización pagó al asegurado.[25] En estos casos, la aseguradora no representa a su asegurado, sino que le sustituye, aunque sólo para recobrar del tercero lo pagado por ella, según los términos de la póliza.[26] El alcance de esta sustitución "está claramente delimitado y se circunscribe a reclamar los derechos y remedios que tenía el asegurado frente al causante de los daños, relativos al pago que la compañía aseguradora le hizo al asegurado".[27]

Este tipo de subrogación constituye una novación modificativa subjetiva de la parte activa que no extingue la obligación original sino que la preserva con un acreedor nuevo. La subrogación puede operar por virtud de la ley o como producto de un contrato. A la primera se le conoce como subrogación legal y a la segunda como subrogación convencional. Típicamente, la subrogación que opera a favor de la aseguradora es de esta segunda modalidad, pues los contratos de seguros normalmente incluyen una cláusula de subrogación. En estos casos, lo acordado delimita su

---

[25] *Id*, pp. 5-6. Véase además Gen. Accident Ins. Co. P.R. v. Ramos, 148 D.P.R. 523, 532 (1999); Aseg. Lloyd's London v. Cía. Des. Comercial, 126 D.P.R. 251, 267 (1990).

[26] Coop. Seguros Múltiples v. Carlo, *supra*, pp. 5-6.

[27] *Id*, p. 6.

extensión, condiciones y alcance pues "la relación entre una aseguradora y su asegurado es de naturaleza contractual y se rige concretamente por lo pactado en el contrato de seguros, que es ley entre las partes".[28] Si no hay una cláusula contractual de subrogación, hay que analizar si el pago de la aseguradora le faculta para ejercer una acción de subrogación legal.

En nuestra jurisdicción el negocio de seguros está revestido de un interés público sustancial.[29] La interpretación de los contratos de seguro se hará globalmente, a base del conjunto total de sus términos y condiciones y analizando sus diferentes cláusulas las unas con las otras.[30] Por otra parte, las cláusulas oscuras se interpretarán a favor del asegurado y las cláusulas de exclusión serán interpretadas restrictivamente.[31] Las dudas serán resueltas "de modo que se cumpla con el propósito de la póliza".[32]

El propósito de la póliza está directamente relacionado con los riesgos cubiertos por ésta. La asunción de riesgo

---

[28] Gen. Accident Ins. Co. P.R. v. Ramos, *supra*, p. 531.

[29] PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881, 901 (1994).

[30] *Véase* artículo 11.250 del Código de Seguros, 26 L.P.R.A. § 1125.

[31] PFZ Props., Inc. v. Gen. Acc. Ins. Co., *supra*, p. 902. Véase además Díaz Ayala et al. v. E.L.A., 153 D.P.R. 675, 691 (2001); artículo 11.140 del Código de Seguros, 26 L.P.R.A. § 1114.

[32] PFZ Props., Inc. v. Gen. Acc. Ins. Co., *supra* (Énfasis suplido).

por parte de la aseguradora "es uno de los elementos principales de[l] contrato de seguro".[33] Por tanto, al determinar la responsabilidad de ésta frente a su asegurado, lo fundamental es analizar cuál fue el riesgo cubierto por la póliza y cuál fue el riesgo materializado. Como veremos, esto es crucial al decidir si aplica la doctrina de la anti-subrogación, pues para distinguir entre quién es un asegurado y quién es un tercero, particularmente en una póliza múltiple como en el caso de autos, hace falta determinar cuál fue el riesgo cubierto, cuál fue el riesgo materializado y, más importantemente, en virtud de cuál cubierta se indemnizó al asegurado. El elemento del riesgo cubierto permite que en algunas circunstancias una persona sea un asegurado, co-asegurado o asegurado adicional, mientras que en otras sea considerado un tercero.

Generalmente, mediante una póliza de propiedad comercial, la aseguradora indemnizará al asegurado en caso de que su propiedad sufra daños.[34] Por otro lado, en una póliza de responsabilidad comercial general, la aseguradora protege al asegurado en caso de que éste cause daños a terceros, sean físicos o a su propiedad.[35] Como manifestamos

---

[33] Aseg. Lloyd's London v. Cía. Des. Comercial, *supra*, p. 267.

[34] Los daños pueden ser causados por un tercero, un asegurado adicional, un co-asegurado o el propio asegurado. La póliza particular determinará cuáles de estos riesgos estarán cubiertos y serán indemnizados.

[35] *Véase* PFZ Props. Inc. v. Gen. Acc. Ins. Co., *supra*, p. 908.

en <u>Meléndez Piñero v. Levitt & Sons of P.R.</u>, los seguros de responsabilidad general generan en la aseguradora "la obligación de indemnizar a un <u>tercero</u> por los daños y perjuicios causados por el asegurado".[36] Claro está, la determinación del tipo y límite de una cubierta dependerá fundamentalmente de la póliza específica que exista entre las partes.

Con este trasfondo en mente, nos corresponde determinar, en primer lugar, si aplica en nuestra jurisdicción la doctrina de la anti-subrogación. Ésta, según hemos explicado, establece que una aseguradora que emite un pago a favor de su asegurado no puede subrogarse contra éste en caso de que el asegurado sea el responsable del daño sufrido. De esa forma, no se permite a la aseguradora cobrarle a su asegurado por un riesgo que la propia aseguradora asumió.

III.

La doctrina de la anti-subrogación, según aplica a los contratos de seguro, existe tanto en sistemas civilistas como en el *common law*. Dado que, "en materia de seguros, la praxis de este Tribunal ha consistido en utilizar las normas más avanzadas del derecho anglosajón y del derecho civil",[37] analizaremos dicha doctrina según ha sido desarrollada por ambas tradiciones jurídicas y veremos si esta figura tiene cabida en nuestro Derecho puertorriqueño de seguros,

---

[36] 129 D.P.R. 521, 537 (1991). (Énfasis súplido.)

[37] <u>Coop. Seguros Múltiples v. Carlo</u>, *supra*, p. 15.

aplicando normas generales de derecho, particularmente la equidad, y las limitaciones que por razones de orden público tiene la libertad de contratación en nuestro ordenamiento.

En síntesis, la doctrina de la anti-subrogación evita que una aseguradora se subrogue contra su propio asegurado. Es decir, si un asegurado sufre daños por su propia negligencia, no se permite que, una vez la aseguradora le indemnice por los daños según los términos de la póliza, ésta se subrogue contra el asegurado y le exija un reembolso. De permitirse ello, la aseguradora se estaría apropiando de las primas del asegurado sin correr riesgo alguno, pues recobraría lo que pagó de la persona cuyo riesgo asumió. Según esta doctrina, el derecho de subrogación de una aseguradora se limita a casos en que el daño causado sea producto de la culpa o negligencia de un tercero propiamente. Claro está, la doctrina de la anti-subrogación no aplica si ha habido fraude por parte del asegurado o si existe colusión entre éste y el tercero.[38] En ambos casos, la aseguradora se podrá subrogar contra su asegurado. Dicho esto, debemos recurrir al derecho comparado, analizando con mayor detenimiento el desarrollo de esta doctrina tanto en España como en los Estados Unidos, con miras a identificar la viabilidad de esta figura en nuestro ordenamiento.

---

[38] *Véase por ejemplo* 16 Couch on Insurance 3d, *infra*, p. 224-26; Am. Nat'l Dire Ins. Co. v. Hughes, 658 N.W.2d 330, 334 (2003); Sherwood Medical Co. v. B.P.S. Guard Servs., 882 S.W.2d 160, 162 (1994) (Missouri).

En España, la doctrina de la anti-subrogación tiene rango estatutario.[39] En lo pertinente, el artículo 43 de la Ley de Contratos de Seguros española dispone así:

> El asegurador, una vez pagada la indemnización, podrá ejercitar los derechos y las acciones que por razón del siniestro correspondieran al asegurado frente a las personas responsables del mismo, hasta el límite de la indemnización.
>
> […]
>
> El asegurador no tendrá derecho a la subrogación contra ninguna de las personas cuyos actos u omisiones den origen a responsabilidad del asegurado, de acuerdo con la ley, ni contra el causante del siniestro que sea, respecto del asegurado, pariente en línea directa o colateral dentro del tercer grado civil de consanguinidad, padre adoptante o hijo adoptivo que conviva con el asegurado. Pero esta norma no tendrá efecto si la responsabilidad proviene de dolo o si la responsabilidad está amparada mediante un contrato de seguro. En este último supuesto, la subrogación estará limitada en su alcance de acuerdo con los términos de dicho contrato.[40]

Como regla general en el derecho español, una aseguradora no puede subrogarse contra su propio asegurado. Según el Tribunal Supremo de España, "la excepción a la regla general de subrogación de la aseguradora está inspirada en el propósito de posibilidad que el seguro sea útil al asegurado, de modo que no se vea en la precisión, por razones jurídicamente valorables, de tener que aportar

---

[39] Vale aclarar que esta doctrina no tiene génesis directa en el Código Civil, sino en una ley especial.

[40] RCL 1980, 2295 (Énfasis suplido). Más adelante citaremos la parte restante del artículo 43, pues ésta se refiere a la doctrina de la indemnización completa ("*make whole doctrine*"), asunto que discutiremos posteriormente.

fondos para rembolsar al asegurador todo o parte de lo que de él hubiera cobrado".[41]

En los Estados Unidos, la doctrina de la anti-subrogación es de origen jurisprudencial y, además, ha sido ampliamente discutida. Al igual que en España, la regla general en casi la totalidad de las jurisdicciones de los Estados Unidos, incluyendo la federal, es que una aseguradora no puede subrogarse contra su propio asegurado.[42] Según el tratadista Couch: "Durante mucho

---

[41] Sentencia del 12 de febrero de 2008, Repertorio de Jurisprudencia 5492, Aranzadi, p. 13254. Véase además la Sentencia del 24 de julio de 2007, Repertorio de Jurisprudencia 4706, Aranzadi, p. 10087: "El propio art. 45 de la Ley de Contrato de Seguro […] impide el ejercicio de la acción subrogatoria que establece en perjuicio del propio asegurado".

[42] *Véase por ejemplo* Great Lakes Transit Corp. v. Interstate S.S. Co., 301 U.S. 646 (1937), Luckenbach v. W.J. McCahan Sugar Refining Co., 248 U.S. 139 (1918), Wager v. Providence Ins. Co., 150 U.S. 99 (1893) en la jurisdicción federal; Vanliner Ins. Co. v. Sampat, 320 F.3d 709 (7th Cir. 2003) en Indiana; Jos. A. Bank Clothiers v. Brodsky, 950 S.W.2d 297 (1997), Sherwood Medical Co. v. B.P.S. General Servs., 882 S.W.2d 160 (1994) (Missouri); Am. Nat'l Fire Ins. Co. v. Hughes, 658 N.W.2d 310 (2003), Community Credit Union v. Homeliving, 487 N.W.2d 602 (1992) (Dakota del Norte); Aetna Casualty & Surety Co. v. Urban Impel Bldg. & Rental Corp., 526 N.E.2d 819 (1987) (Ohio); Stetina v. State Farm Mut. Auto. Ins. Co., 243 N.W.2d 341 (1976) (Nebraska); Home Ins. Co. v. Pinski Bros., 500 P.2d 945 (1972) (Montana); Glens Falls Ins. Co. v. City of New York, 293 A.D.2d 568 (2002)", Commerce & Indus. Ins. Co. v. Admon Realty, 168 A.D.2d 321 (1990), Pennsylvania General Ins.Co. v. Austin Powder Co., 502 N.E.2d 982 (1986) (Nueva York); Contl Divide Ins. Co. v. Western Skies Mgmt., Inc., 107 P.3d 1145 (2004) (Colorado); Curles v. United States Fid. & Guar. Co., 403 S.E.2d 458 (1991) (Georgia); State ex re. Regent of N.M. State Univ. v. Siplast, Inc., 877 P.2d 38 (1994) (Nuevo México); Hanover Ins. Co. v. Honeywell, Inc., F.Supp.2d 1305 (N.D. Okl. 2002) en Oklahoma; Great Am. Ins. Co. v. Bar Club, 921 P.2d 626 (1996) (Alaska); Lexington Ins. Co. v. Raboin, 712 A.2d 1011 (1998) (Connecticut).

tiempo se ha sostenido que no puede surgir un derecho de subrogación a favor de una aseguradora contra su propio asegurado".[43] Es decir, la regla general de la subrogación en el campo de seguros parte de la premisa de que el daño ha sido causado por un tercero, por lo que la facultad de subrogación de la aseguradora se limita a ir contra éste. Según Couch: "Por definición, la subrogación surge únicamente en cuanto a los derechos del asegurado contra terceras personas a quienes la aseguradora no tiene deber alguno".[44]

La doctrina de la anti-subrogación en los Estados Unidos tiene como fundamento consideraciones de política pública, pues, según explica Couch: "[Una] aseguradora no debería poder transmitir su pérdida a su propio asegurado, evitando así la cubierta que su asegurado obtuvo y pagó mediante primas".[45] Ahora bien, dado que el propósito de la

---

[43] 16 Couch on Insurance 3d, Thomson West (1995), p. 224-12. "[I]t has long been held that no right of subrogation can arise in favor of an insurer against its own insured".

[44] 16 Couch on Insurance 2d, §61:136, p. 195. "[B]y definition subrogation arises only with respect to rights of the insured against third persons to whom the insurer owes no duty". Según Ostrager & Newman:"Where an insurer indemnifies an insured who is entitled to recover compensation for that loss from a third party, the insurer is subrogated to the insured's rights of recovery from that third party". Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes, 10th ed., Aspen Law & Business (2000), p. 272 (Énfasis suplido). Véase además Pennsylvania General Ins. Co. v. Austin Powder Co., 502 N.E.2d 982, 985 (1986); Stetina v. State Farm Mut. Auto Ins. Co., 243 N.W.2d 341, 346 (1976) (Nebraska).

[45] 16 Couch on Insurance 3d, Op.Cit., p. 224-18. "The antisubrogation rule is intended to prevent an insurer from recovering back from its insured that loss or damage the

doctrina de la anti-subrogación es evitar que la aseguradora recobre de su asegurado lo pagado como resultado del riesgo asumido en la póliza, es importante determinar quién es un asegurado para efectos de esta doctrina. Así se reconoce tanto en la tradición angloamericana como en el derecho civil.[46]

En un contrato de seguros pueden haber dos tipos de asegurados: un asegurado o asegurados principales y un asegurado adicional; éste, a su vez, puede ser implícito o nombrado. El asegurado principal es la persona a cuyo favor se emite la póliza y a quién ésta cubre en su totalidad. Puede tratarse de más de una persona, si así se dispone expresamente en la póliza. El asegurado adicional implícito se refiere a los llamados "asegurados automáticos" que no son nombrados expresamente en la póliza.[47] No hace falta añadirlos mediante endoso porque su cobertura se desprende de la póliza.[48] Finalmente, el asegurado adicional nombrado

---

risk of which the insured had passed along to the insurer under the policy […] [An] insurer should not be able to pass its loss to its own insured, thus avoiding coverage which its insured has purchased and paid in the form of premiums". (Énfasis suplido). Véase además Home Ins. Co. v. Pinsky Bros., 500 P.2d 945, 949 (1972) (Montana).

[46] Douglas R. Richmond, The Additional Problems of Additional Insureds, 33 Tort & Ins. L.J. 945 (1998). Véase Sentencia del 12 de febrero de 2008, Aranzadi, Repertorio de Jurisprudencia 5492.

[47] Douglas R. Richmond, The Additional Problems of Additional Insureds, supra, p. 946.

[48] Un ejemplo de esto es una póliza que mencione a los familiares del asegurado. No hace falta mencionar sus nombres o añadirlos mediante endoso, pues se desprende de la póliza que esa persona, por el hecho de ser familiar, está cubierto. En algunas jurisdicciones, se ha resuelto que la

es aquella persona, natural o jurídica, añadida expresamente por el asegurado principal por vía de un endoso.[49] El ejemplo que da Richmond es muy ilustrador para el caso de autos:

> Asuntos sobre los asegurados adicionales surgen generalmente en casos que involucran propiedad comercial. Los arrendadores comerciales típicamente insisten en que se les nombre como asegurados adicionales en las pólizas [de Responsabilidad Comercial General] de sus arrendatarios para protegerlos contra la responsabilidad vicaria producto de los actos u omisiones negligentes de sus arrendatarios, o para protegerse contra responsabilidad por los sucesos que ocurran en la propiedad arrendada.[50]

Normalmente, el asegurado principal goza de mayores derechos bajo una póliza que el asegurado adicional nombrado.[51] En algunos casos, el asegurado adicional nombrado puede ser añadido a la totalidad de la póliza o

---

póliza de seguro del propietario arrendador cobija implícitamente a su arrendatario, pero que la póliza del arrendatario no cubre al propietario arrendador. Véase por ejemplo Hanover Ins. Co. v. Honeywell, Inc., 200 F.Supp.2d 1305 (N.D. Okl., 2002); Lexington Ins. Co. v. Raboin, 712 A.2d 1011 (1998) (Connecticut); Great Am.Ins. Co. v. Bar Club, 921 P.2d 626 (1996) (Alaska); Community Credit Union v. Homeliving, 487 N.W.2d 602 (1992) (Dakota del Norte).

[49] Douglas R. Richmond, The Additional Problems of Additional Insureds, *supra*, p 948.

[50] *Id*, p. 946. "Additional insured issues also commonly arise in cases involving commercial real estate. Commercial lessors typically insist that they be named as additional insureds on their lessees' [Commercial General Liability] policies to protect against vicarious liability for their tenant's negligent acts or omissions, and to guard against liability for occurrences on leased premises". La protección así otorgada al dueño de un inmueble arrendado, al incluirlo como asegurado adicional nombrado en la póliza de responsabilidad comercial general, es para los actos u omisiones negligentes del arrendatario y los actos u omisiones negligentes del propio arrendador contra terceros.

solamente a algunas de sus partes.[52] Por tanto, en cuanto aquellas partes que le cubren, será un co-asegurado y operará la doctrina de la anti-subrogación.[53] En aquellas partes que no le cubren, será considerado como un tercero y no aplicará dicha figura.

La doctrina de la anti-subrogación únicamente aplica si la aseguradora pretende subrogarse contra un asegurado o co-asegurado bajo la misma cubierta por la cual se materializó el riesgo previsto y se emitió el pago correspondiente. Por tanto, la aseguradora no podrá subrogarse contra un asegurado adicional nombrado si el riesgo materializado y el pago emitido responden a una de las cubiertas de la póliza en la cual se le incluyó como asegurado adicional. Por el contrario, si el riesgo materializado y el pago emitido responden a una de las cubiertas en las que no se le adicionó, será considerado un tercero y la aseguradora podrá subrogarse en su contra.

La importancia de la materialización del riesgo previsto como elemento necesario tanto para el pago, como para la subrogación y la limitación al derecho a la subrogación, ha sido un factor en la jurisprudencia del

---

[51] *Id*, p. 947.

[52] *Id*, p. 948.

[53] 16 Couch on Insurance 2d, *supra*, p. 197. "No right of subrogation arises against a person who holds the status of an additional insured…". Según Richmond: "The antisubrogation doctrine bar extends to additional insureds". Richmond, The Additional Problems of Additional Insureds, *supra*, p. 979.

Tribunal Supremo de España.[54] Lo mismo es cierto respecto a la jurisprudencia y tratadistas de Estados Unidos quienes han discutido el asunto en mucho detalle. En particular, la concreción del riesgo es fundamental cuando se trata de un asegurado adicional nombrado únicamente en algunas de las cubiertas de una póliza. Como plantean Ostrager y Newman, si el asegurado adicional nombrado fue incluido en la cubierta bajo la cual se materializó el riesgo y se emitió el pago al asegurado adicional, la aseguradora no podrá subrogarse contra éste.[55] Por el contrario, si el riesgo realizado y el pago emitido corresponden a una pérdida distinta al riesgo al cual se le adicionó en la póliza, no operará la doctrina de la anti-subrogación. Esta es la conclusión que propone Couch:

> Estas declaraciones amplias [sobre la doctrina de la anti-subrogación] generalmente son correctas pero tienden a obviar una limitación crucial a la regla: la prohibición a la subrogación de la aseguradora contra sus propios asegurados aplica a reclamaciones que surgen <u>del mismo riesgo por el cual el asegurado estaba cubierto por la aseguradora</u>.[56]

---

[54] *Véase por ejemplo* la Sentencia del 19 de junio de 2007, Aranzadi, Repertorio de Jurisprudencia 5570, en donde el alto foro español discutió la importancia del riesgo materializado en el contexto de permitir la acción de subrogación de la aseguradora contra un tercero.

[55] Ostrager & Newman, *Op.Cit.*, p. 273. (Énfasis suplido). "When the third party against whom the insurer seeks subrogation is a <u>named insured in relation to the loss at issue</u> or is an <u>additional insured with respect **to that loss**</u>, the general rule is that the insurer may not bring a subrogation action against its own insured".

[56] <u>16 Couch on Insurance 3d</u>, *Op.Cit.*, p. 224-15 (Énfasis suplido). "These broad statements [about the antisubrogation rule] are generally accurate but tend to leave out a crucial boundary to the rule: the prohibition on insurer's

[…]

Por tanto, la doctrina de la anti-subrogación es una limitación al derecho de subrogación de la aseguradora cuando el subrogado y el tercero son ambos asegurados por la misma aseguradora bajo la <u>misma reclamación</u>, por lo que la aseguradora que provee cubierta a ambas partes de una acción contra tercero está imposibilitada de recuperar de uno de los asegurados -el tercero demandado- por el pago que hace a nombre de otro asegurado -el tercero demandante-.[57]

[…]

En su sentido tradicional y puro, la aplicación de la doctrina de la anti-subrogación contempla al mismo asegurador, al mismo asegurado y a hechos idénticos que generan responsabilidad bajo la misma póliza.

La aplicación de la doctrina de la anti-subrogación se complica aún más en el contexto de <u>múltiples pólizas, múltiples asegurados y múltiples riesgos</u>, al igual que cuando hay múltiples aseguradoras.[58]

[…]

[L]a doctrina de la anti-subrogación se entiende inaplicable cuando están envueltas pólizas de seguro distintas y separadas […] De

---

subrogation against their own insureds applies to claims arising <u>from the very risk for which the insured was covered by that insurer</u>."

[57] *Id*, pp. 224-18-19 (Énfasis suplido). "Accordingly, the antisubrogation rule is a limitation on the insurer's right of subrogation when the subrogor and third party are both insureds of the same carrier on the <u>same claim</u>, whereby the insurer which provides coverage to both sides of a third-party action is prevented from recouping from one insured – the third-party defendant- a payment it makes on behalf of another insured -the third-party plaintiff-."

[58] *Id*, p. 224-57 (Énfasis suplido). "In its traditional and pure sense, the application of the antisubrogation rule contemplates the same insurer, the same insured, and identical facts triggering liability under the same policy. Application of the antisubrogation rule is further complicated in the context of <u>multiple policies, multiple insureds and multiple risks</u>, as well as when there are multiple insurers".

igual forma, la doctrina de la anti-subrogación no aplica cuando <u>el riesgo cubierto por la misma aseguradora **es distinto** ya sea bajo la misma póliza o bajo pólizas separadas.</u>[59]

La jurisprudencia de las diferentes jurisdicciones de los Estados Unidos está acorde con esta visión de la doctrina de la anti-subrogación. Ello es así, particularmente en cuanto a la necesidad de que el riesgo materializado sea el mismo que el riesgo cubierto,[60] la aplicación de la doctrina a favor de co-asegurados y asegurados adicionales,[61] y la limitación de esta a casos en que el daño sufrido sea del tipo previsto por la cubierta a la que fue añadido el asegurado adicional.[62]

---

[59] *Id*, p. 224-61 (Énfasis suplido). "[T]he antisubrogation rule has been deemed inapplicable when a distinct and separate insurance policies are involved […] Similarly, the antisubrogation rule does not apply when <u>the risk covered by the same insurer **differs** either under the same policy. or under separate policies</u>."

[60] <u>Vanliner Ins. Co. v. Sampat</u>, 320 F.3d 709, 712 (7th. Cir. 2003): "[F]or the risk that it has agreed to insure"; <u>Glens Falls Ins. Co. v. City of New York</u>, 293 A.D.2d 568, 570 (2002) (Nueva York); <u>Curles v. United States Fid. & Guar. Co.</u> , 403 S.E.2d 458, 459 (1991) (Missouri); <u>Am. Nat'l Fire Ins. Co. v. Hughes</u>, *supra*, p. 334: "However, an insurer is not entitled to subrogate from its own insured for a claim arising from the very risk for which the insured was covered".

[61] <u>Curles v. United States Fid. & Guar. Co.</u>, *supra*; <u>Am. Nat'l Fire Ins. Co. v. Hughes</u>, *supra*, p. 334: "An insurer is not entitled to subrogation from entities named as insureds in the insurance policy, or entities deemed to be additional insureds under the policy".

[62] <u>Peavey Ins. Co. v. M/V ANPA</u>, 971 F.2d 1168, 1177 (5th. Cir. 1992) aplicando la normativa de Luisiana: "An insurer cannot by way of subrogation recover against its insured or an additional insured any part of its payment for <u>a risk covered by the policy</u>" (Énfasis suplido); <u>Wager v. Providence Ins. Co.</u>, 150 U.S. 99 (1893); <u>Curles v. United States Fid. & Guar. Co.</u>, 403 S.E.2d 458, 459 (1991)

Los tribunales de algunas jurisdicciones en los Estados Unidos se han enfrentado a situaciones parecidas a la controversia del caso de autos, en las que existe tanto una cubierta de propiedad comercial y una de responsabilidad comercial general. En cuanto a la diferencia entre estos dos tipos de cubiertas, el tipo y límite de su protección y su interacción con la doctrina de la anti-subrogación, el análisis de estos tribunales confirma el nuestro y es altamente ilustrador.

En Contl. Divide Ins. Co. v. Western Skies Mgmt., Inc., el tribunal apelativo de Colorado explicó lo siguiente cuando una aseguradora pretendía subrogarse contra una persona que era asegurado suyo en una póliza que no cubría el riesgo materializado:

> Los tribunales reconocen una excepción a la doctrina de la anti-subrogación. Si una aseguradora paga a nombre de uno de sus asegurados por daños causados por otro asegurado, bajo una póliza que no cubre al segundo por la pérdida, la aseguradora puede recobrar del otro asegurado por vía de la subrogación. Esta excepción a veces es conocida como la 'excepción de cero cubierta'.
>
> [...]
>
> La excepción de cero cubierta únicamente surge cuando la póliza excluye cobertura por un tipo particular de riesgo.[63]

(Missouri); Jos. A. Bank Clothiers v. Brodsky, 950 S.W. 2d 297, 303 (1997): "[S]ubrogation arises only with respect to the rights of the insured against third party persons to whom the insurer owes no duty. No right of subrogation arises against a person who holds the status of an additional insured [...] The parties may pursue claims against their co-insured for risks **not covered under the policy**."

[63] 107 P.3d 1145, 1148 (Énfasis suplido). "Courts recognize an exception to the antisubrogation rule. If an insurer pays on behalf of one insured for damages caused by a second

Es decir, si la póliza que cubre al asegurado adicional no contempla el riesgo materializado, no hay deber de la aseguradora para con éste y no opera la doctrina de la anti-subrogación.

En Insurance Corp. of N.Y v. Cohens Realty Asoc., L.P.,[64] el asegurado principal, arrendatario de un inmueble, estaba cubierto por una póliza de propiedad comercial y una de responsabilidad comercial general. Mediante endoso, el asegurado principal añadió al propietario del establecimiento como asegurado adicional nombrado únicamente en la póliza de responsabilidad comercial general. Tras un fuego que destruyó varios bienes del arrendatario, la aseguradora emitió un pago bajo la póliza de propiedad comercial y se subrogó en los derechos de éste. Acto seguido, demandó al propietario del inmueble. Éste alegó que aplicaba la doctrina de la anti-subrogación por ser un co-asegurado. El tribunal resolvió que dado que el propietario-arrendador era un asegurado adicional únicamente bajo la cubierta de responsabilidad comercial general del arrendatario y no fue nombrado bajo su cubierta de propiedad

---

insured, under a policy that does not cover the second insured for the loss, the insurer may recover from the second insured by subrogation. This exception is sometimes called the 'no coverage exception'. […] [T]he no coverage exception arises only when the policy excludes coverage for a certain type of risk".

[64] 50 A.D. 3d 1228 (2008).

comercial, la aseguradora no tenía deber hacia el arrendador.[65]

En cuanto al argumento del arrendador de que su estatus como asegurado adicional bajo la póliza de responsabilidad comercial general cubría el daño causado, el tribunal resolvió que era evidente que el lenguaje de la cubierta de responsabilidad comercial general <u>solamente se refería a aquella responsabilidad que surgiera de reclamaciones de</u> **terceras personas** <u>y no a la responsabilidad potencial del</u> **dueño de la propiedad**.[66] La doctrina de la anti-subrogación no operaba en ese caso porque: el arrendador era un asegurado adicional únicamente en cuanto a la póliza de responsabilidad comercial general; el daño sufrido y el pago emitido fue en virtud de la póliza de propiedad comercial; el arrendador no era un asegurado adicional bajo esa póliza y, por último, la póliza de responsabilidad comercial general únicamente le protegía frente los daños causados a terceros.[67] Esta conclusión está acorde con el criterio expuesto por Couch:

---

[65] *Id*, p. 1229. "Since [landlord] was only an additional insured under [the tenant's Commercial General Liability] coverage and not named under its business owner's property coverage […] defendant [the insurer] had no duty [towards the landlord]".

[66] *Id,* pp. 1229-30 (2008) (Énfasis suplido). "[I]t is apparent that this language [in the Commercial General Liability coverage] <u>only refers to liability stemming from</u> **third-party** <u>claims, not any potential liability</u> **of the landlord or property owner**".

[67] *Véase también* Glens Falls Ins. Co. v. City of New York, *supra*; Commerce & Indus. Ins. Co. v. Admon Realty, 168 A.D.2d 321 (1990); Great Am. Ins. Co. v. Bar Club, *supra*;

En muchas instancias, se ha resuelto que la doctrina de la anti-subrogación <u>no aplica</u> para evitar la subrogación de la aseguradora contra un tercero que está asegurado para <u>algunos</u> propósitos, cuando la reclamación subrogada envuelve <u>riesgos y pérdidas para los cuales el tercero **no está, de hecho, cubierto por la póliza**</u>.[68]

De otra parte, la Sentencia del Tribunal Supremo de España del 22 de diciembre de 1999 también es altamente ilustrativa para resolver la controversia de autos. En ese caso, la aseguradora adicional fue añadida únicamente al seguro de responsabilidad civil, no al de incendio. El tribunal resolvió que no procedía aplicar la norma estatutaria de la anti-subrogación, dado que el riesgo materializado fue el previsto por el segundo, la demandada no fue añadida como asegurada respecto a éste y el seguro que le cobijaba no cubría el daño causado a la asegurada principal. Según explica el Tribunal: "[L]a Sociedad Control no tiene la condición de asegurada, dado que, es preciso insistir en ello, la repetida cláusula 23.1(d) <u>contemplaba un seguro de responsabilidad civil, en tanto que la póliza</u>

---

State ex rel. Regents of N.M. State Univ. v. Siplast, Inc., 877 P.2d 38 (1994) (Nuevo México).

[68] <u>16 Couch on Insurance 3d</u>, *Op.Cit*., pp. 224-62-63 (Énfasis suplido). "In many instances, the antisubrogation rule has been held <u>inapplicable</u> to bar an insurer's subrogation action against a third party which is insured for <u>some</u> purposes, where the subrogation claim involves <u>risks or losses for which the third party is not, in fact, covered by the policy</u>".

por la que litiga la actora es de incendio y otros eventos".[69]

Lo anterior pone en evidencia una doctrina que es fundamental tanto en la tradición angloamericana como en derecho civil: una aseguradora no puede subrogarse contra su propio asegurado. Esto es así tanto en la subrogación legal como en la convencional. Permitir lo contrario desvirtuaría completamente el propósito del contrato de seguro y relevaría a la aseguradora del riesgo asumido a cambio del pago de unas primas. Claro está, hace falta que se trate de un asegurado, sea principal o adicional, bajo la póliza que prevé el riesgo materializado. De lo contrario el supuesto asegurado será, realmente, un tercero y la aseguradora podrá subrogarse en su contra.

El artículo 7 del Código Civil le ordena a los tribunales dirimir las controversias sometidas ante su consideración y les prohíbe rehusarse a emitir un fallo "a pretexto de silencio, obscuridad, o insuficiencia de la ley…".[70] Por el contrario, dispone este artículo que "[c]uando no haya ley aplicable al caso, el tribunal resolverá conforme a equidad, que quiere decir que se tendrá en cuanta la razón natural de acuerdo con los principios generales del derecho, los usos y costumbres aceptados y

___

[69] Aranzadi, Repertorio de Jurisprudencia 1290, p. 2013 (Énfasis suplido).

[70] 31 L.P.R.A. § 7.

establecidos".[71] En cuanto al rol de la jurisprudencia en el desarrollo del derecho, hemos resuelto que ésta "interpreta y aplica la ley a los casos concretos, llena las lagunas cuando las hay y, en lo posible, armoniza las disposiciones de ley que estén o que parezcan estar en conflicto".[72]

De igual forma, en cuanto la adopción de doctrinas empleadas en otras jurisdicciones, reiteramos que no nos mueve "el hecho de que ésta sea una de mayor o menor aceptación, sino que el criterio rector es que tal doctrina se adapte a nuestro derecho vigente y que éste sea a su vez la solución más indicada y conveniente para nuestra realidad económica, social y cultural".[73] En particular, hemos recurrido al derecho común anglosajón debido a que en el caso de autos estamos ante una controversia relacionada al derecho de seguros que en nuestra jurisdicción ha incorporado elementos de ambas tradiciones jurídicas, lo cual refuerza la utilidad de un enfoque comparativo.[74]

En atención a lo anterior, resolvemos que la doctrina de la anti-subrogación, según ha sido descrita en esta Opinión, es compatible con nuestro ordenamiento y nuestro derecho de seguros. Esta figura aplicará tanto en la subrogación legal como en la convencional.[75] Examinemos,

---

[71] *Id.*

[72] Collazo Cartagena v. Hernández Colón, 103 D.P.R. 870, 874 (1975).

[73] Pereira v. I.B.E.C., 95 D.P.R. 28, 83 (1967).

[74] *Véase Id.*

entonces, el papel que desempeña esta doctrina en el caso de autos.

Hemos visto que el Grupo Marcelino era el asegurado principal tanto en la póliza de propiedad comercial como en la de responsabilidad comercial general.[76] Por su parte, CODECO fue añadido mediante el Endoso B <u>únicamente a la póliza de responsabilidad comercial general</u>. Los daños sufridos por el Grupo Marcelino y el pago emitido por Integrand respondían al riesgo cubierto por la póliza de propiedad comercial. Por su parte, CODECO no era un asegurado adicional bajo la póliza de propiedad comercial. Por tanto, se trata de una excepción a la doctrina de la anti-subrogación. De igual forma, dado que la póliza de responsabilidad comercial general no cubría el riesgo materializado, pues se limitaba únicamente a proteger al Grupo Marcelino y a CODECO de los daños que éstos causaran a <u>terceros</u>, la conclusión obligada es que el estatus de CODECO como asegurado adicional bajo dicha póliza no le protege del daño que alegadamente le causó al Grupo Marcelino y por el cual Integrand se subrogó en su contra.

---

[75] En cuanto la subrogación convencional, si bien en nuestro ordenamiento rige el principio de libertad de contratación, por consideraciones de orden público no se puede validar un pacto mediante el cual la aseguradora pueda subrogarse contra su propio asegurado, salvo en situaciones donde haya intención, fraude o diseño. Véase el artículo 1207 del Código Civil, <u>31 L.P.R.A. § 3372</u>.

[76] No hace diferencia distinguir entre pólizas y cubiertas. En caso de que concluyéramos que se trata de una sola póliza con varias cubiertas, el hecho de que se añadiera a CODECO únicamente para efectos de <u>una sola cubierta</u> no cambia el resultado de nuestro análisis.

Los peticionarios también alegan que la carta enviada por el Grupo Marcelino a Integrand el 8 de agosto de 2007 constituye una renuncia válida al derecho de subrogación de la segunda. Sin embargo, como señalamos antes, a esa fecha ya Integrand había emitido el pago. Sabemos que el derecho de subrogación que adquiere el nuevo acreedor que emite un pago a favor del acreedor original, tanto en la subrogación legal como en la convencional, surge al momento de efectuarse el pago y que desde ese momento el que paga se convierte en el acreedor de la obligación.[77] Cualquier renuncia al derecho de subrogación que pueda hacer el acreedor original deberá hacerla <u>antes</u> de que el nuevo acreedor emita su pago. De lo contrario, estaría renunciando a un derecho que ya no es suyo.[78]

En segundo lugar, aunque la póliza permite al asegurado renunciar al derecho de subrogación después que la aseguradora haya hecho el pago, la carta del Grupo Marcelino no cumplió con el procedimiento establecido en la póliza. Por eso no constituyó una renuncia válida. La póliza claramente requiere que la parte liberada por la renuncia sea alguien asegurado por la póliza de propiedad comercial ("under this Coverage Part"), o, en la alternativa, una

---

[77] Como veremos a continuación, en caso de que el pago realizado sea menor a la totalidad del crédito del titular original, la subrogación del nuevo acreedor será parcial. En esas circunstancias, habrán dos acreedores por cantidades distintas que sumarán el crédito total.

[78] Esta realidad está contemplada en la póliza en el caso de autos que permite la renuncia al derecho de subrogación si

entidad propiedad de o controlada por el asegurado, una entidad que sea dueña o que controle al asegurado, o el inquilino del asegurado.

En este caso, la renuncia al derecho de subrogación se hizo después del pago hecho por Integrand y CODECO no era inquilino del Grupo Marcelino, como tampoco ninguno era dueño o controlaba al otro. Como hemos visto, CODECO únicamente fue añadido en la póliza de responsabilidad comercial general, por lo cual, para efectos de la póliza de propiedad comercial, CODECO era un tercero. Por todo lo anterior, no están presentes los elementos necesarios para que el Grupo Marcelino pueda renunciar al derecho de subrogación de Integrand después de haberse realizado el pago.[79] Siendo ello así, la carta del 8 de agosto no tuvo efecto alguno sobre el derecho de subrogación de Integrand.

---

ésta es: "Prior to a loss to your Covered Property or Covered Income".

[79] La parte peticionaria insiste en que no debemos aplicar la misma definición de co-asegurado o asegurado adicional para efectos de la doctrina de la anti-subrogación y para la interpretación contractual de la cláusula de renuncia de subrogación de la póliza, porque ello haría que la segunda fuese meramente una repetición de la primera. En otras palabras, que si ambas exigen que se trate de un asegurado bajo la cubierta ejercitada, la cláusula contractual carecería de sentido porque operaría la limitación de la doctrina de la anti-subrogación y no sería necesario renunciar al derecho de subrogación de la aseguradora. Ese argumento sería más persuasivo si no fuera por el hecho que, hasta esta Opinión, en Puerto Rico no operaba la doctrina de la anti-subrogación. Por tanto, no se puede hablar de redundancia, pues si hubiésemos resuelto que la doctrina de la anti-subrogación no aplicaba en Puerto Rico y CODECO hubiese sido un asegurado adicional bajo la póliza de propiedad comercial, entonces el Grupo Marcelino hubiera podido ejercer su derecho bajo la cláusula de renuncia. Además, no podemos obviar lo evidente: la cláusula que

IV.

Como segundo señalamiento de error, los peticionarios alegan que Integrand no puede recuperar contra CODECO y su aseguradora porque el Grupo Marcelino aún no ha sido indemnizado por la totalidad de sus daños. Por el contrario, alegan que los fondos separados en el acuerdo transaccional para pagarle a Integrand, en caso de que ésta ganara su pleito contra CODECO, deben ser entregados al Grupo Marcelino para indemnizar los daños no satisfechos. Para ello, citan el artículo 1167 del Código Civil y la doctrina de la indemnización completa o 'make whole doctrine' empleada en los Estados Unidos en el campo del derecho de seguros. Por su parte, Integrand alega que según el acuerdo transaccional que el Grupo Marcelino firmó con CODECO, sin la participación y sin el conocimiento de Integrand, los daños sufridos por el Grupo Marcelino fueron satisfechos. Por tanto, corresponde que se le haga entrega de los $560,000 separados en dicho acuerdo para pagarle a Integrand. Analizaremos conjuntamente el citado artículo del Código Civil y la doctrina de la indemnización completa para precisar los contornos del primero, la compatibilidad de la segunda con nuestro ordenamiento y la interacción de ambas figuras.

El artículo 1167 del Código Civil dispone como sigue:

> El acreedor, a quien se hubiere hecho un pago parcial, puede ejercitar su derecho por el resto

---

permite la renuncia al derecho de subrogación expresamente dispone que la misma aplica a la póliza de propiedad comercial, de la cual CODECO no es un co-asegurado.

con preferencia al que se hubiera subrogado en su lugar en virtud del pago parcial del mismo crédito.[80]

Este artículo se refiere a la subrogación parcial que ocurre cuando el pago emitido por el nuevo acreedor es menos que la totalidad del crédito del acreedor original. En casos de seguros, esto ocurre, por ejemplo, cuando el tope de la póliza es menor que la totalidad de los daños sufridos por el asegurado. En este supuesto, dado que no satisfizo la totalidad del crédito, el nuevo acreedor solamente podrá subrogarse hasta el monto del pago realizado y el acreedor original retendrá el crédito remanente. El artículo 1167 regula la relación entre ambos acreedores frente al deudor. Al referirse al artículo 1213 del Código Civil español, análogo a nuestro artículo 1167, Manresa concluye que esta "subrogación parcial" supone la "subsistencia de los derechos del acreedor primitivo […] y [el artículo 1213] expresamente reconoce, aun cuando sea para considerar preferentes aquéllos, la coexistencia de los que adquiere el tercero subrogado".[81] Según el tratadista, este artículo aplica tanto a la subrogación legal como a la convencional.[82] Continua explicando Manresa que en estos casos "[s]ubsisten dos créditos, y si el total entre éstos dividido tenía afectas algunas garantías especiales,

---

[80] 31 L.P.R.A. 3251.

[81] J.M. Manresa y Navarro, Comentarios al Código Civil Español, Reus, S.A., Madrid, 1967, p. 928.

[82] Id.

seguirán estándolo a uno y otro de aquellos, si otra cosa no se hubiere determinado".[83] Sobre el efecto de este artículo sobre los derechos de cobro de ambos acreedores, Manresa expresa lo siguiente:

> En cuanto a la preferencia de que goza el primer acreedor, no se limita exclusivamente a las especiales garantías de crédito, sino que se extiende a todo el patrimonio del deudor, y así como en un procedimiento particular se antepondría respecto de las primeras al crédito del acreedor subrogado, en un juicio universal, ostentaría análoga preferencia en la misma comparación.
>
> Pero a la expresada preferencia no puede dársele un sentido exagerado, que estorbe las reclamaciones del acreedor subrogado o impida el pago a éste, porque aún no se haya hecho al primitivo ni éste haya utilizado sus derechos, pues llegar a tanto sería como dejar los del acreedor nuevo al arbitrio del antiguo.[84]

De lo anterior se desprende que el acreedor original tiene preferencia sobre el acreedor subrogado en el cobro del crédito debido. Sin embargo, ni la dejadez, y menos aún el estorbo, del acreedor original pueden impedir el derecho del acreedor subrogado a ejecutar su crédito.[85]

El artículo 1167 es una disposición amplia que aplica como regla general a la subrogación. Al haber confrontación en este caso entre el derecho del asegurado a ser

---

[83] *Id.*

[84] *Id.*, pp. 928-929 (Énfasis suplido).

[85] *Véase además* M. Albaladejo, Comentario al Código Civil y Compilaciones Forales, Revista de Derecho Privado, Tomo XVI, Vl. 1, 1991, p. 792. Según Albaladejo, este artículo "abarca todos los supuestos de subrogación". *Id.* Véase además, F. Puig Peña, Tratado de Derecho Civil Español, Madrid, Revista de Derecho Privado, 1951, T. IV, Vl. I, p. 196.

indemnizado totalmente y el derecho de la aseguradora a subrogarse, aunque sea parcialmente, y cobrar al tercero causante del daño lo que pagó al asegurado, nos vemos obligados a analizar las soluciones propuestas por las doctrinas civilistas y de derecho común. En particular, debemos determinar cuáles son los efectos, si alguno, de que el asegurado llegue a una transacción con el alegado causante del daño.

La doctrina de la indemnización completa, que según el reconocido tratadista Couch, presenta algunas de las cuestiones más complejas en el campo de la subrogación en el derecho de seguros,[86] proviene de principios tradicionales de equidad que proponen que el asegurado tiene derecho a ser indemnizado totalmente antes de que su aseguradora pueda recuperar del tercero mediante una demanda de subrogación.[87] Esta puede aplicarse mayormente en dos situaciones. Primero, cuando el tope de la póliza de la aseguradora es menor a la totalidad de los daños sufridos cubiertos por dicha póliza; segundo, cuando el asegurado sufre daños no contemplados en la póliza pero que surgen del mismo evento. Couch advierte sobre la dificultad de establecer una regla abarcadora para cuando los daños exceden el pago realizado por la aseguradora, pues puede haber una disposición estatutaria o una obligación contractual que vaya por encima de cualquier

---

[86] 16 Couch on Insurance 3d, p. 223-145. "[O]ne of the most difficult questions in the field of insurer subrogation".

[87] Id, p. 223-146. "[T]he insured is entitled to be made whole before the insurer recovers on its subrogation claim".

norma general.[88] En particular, reconoce la dificultad de establecer, más allá de una estipulación o una determinación judicial, cuál es la cantidad definitiva de los daños sufridos.[89] No hay duda que si el asegurado ha sido indemnizado totalmente por la aseguradora, la subrogación de ésta contra el tercero es total.[90] Los problemas surgen si se alega que lo pagado por la aseguradora no contempla la totalidad de los daños, si el asegurado sufrió otros daños no contemplados por la póliza o si el monto recuperado del tercero es menos que la totalidad de los daños.

En cualquier caso, el primer paso es, sin duda, determinar la cuantía total de los daños sufridos por el asegurado. Se trata de la determinación legal de dicha cuantía, ya que no basta con una mera alegación o estimado.[91] Cuando esto se hace por vía de una sentencia final y firme hay certeza legal sobre la cuantía de los

---

[88] *Id*, p. 223-147. Posteriormente analizaremos, en primera instancia, si el artículo 1167 limita la aplicación de esta figura. En segunda instancia, si la cláusula de subrogación contenida en la póliza también altera los derechos de la aseguradora y el asegurado en cuanto a cobrar del causante del daño.

[89] *Id*, p. 223-151. "Whether an insured has been 'made whole' is a relative concept that depends upon the insurance contract, the nature and extent of the underlying claim or lawsuit between the insured and third party, and the dollar amounts collected".

[90] *Id*.

[91] *Id*, p. 223-168. Según Couch, el peso de la prueba de demostrar que el asegurado ha sido indemnizado totalmente corresponde a la aseguradora. *Id*, p. 223-170. Véase Rimes v. State Farm Mut. Auto Ins. Co., 316 N.W.2d 348 (1982) (Wisconsin); Illinois Auto. Ins. Exch. V. Brown, 124 A. 691, 693 (1924) (Pennsylvania).

daños.[92] Igual ocurre cuando éstos son estipulados por todas las partes. Ausente esta certeza, como explica Rinaldi, sería mucho más difícil dividir proporcionalmente la compensación obtenida de un tercero causante del daño en situaciones en las que el asegurado alega que no se le ha compensado totalmente.[93] Algunos tribunales en los Estados Unidos han recurrido a la figura del 'juicio dentro del juicio' en la acción de subrogación para determinar la cuantía de los daños totales sufridos por el asegurado.[94] Es decir, para saber si aplica la doctrina de la indemnización completa hace falta saber la cuantía exacta de los daños causados, ya sea mediante sentencia final y firme en el pleito por daños, estipulación por todas las partes o por determinación judicial en el pleito de subrogación. En cuanto a si dicha cuantía se debe limitar a los daños contemplados en la póliza, por lo cual la controversia estaría ceñida a la diferencia entre lo pagado y lo sufrido por esa razón, o si, por el contrario, se trata de todos los daños causados por el acto u omisión negligente, existe una fuerte división entre las diferentes jurisdicciones de los Estados Unidos.[95] Nos persuade la vertiente que concluye que

---

[92] Elaine M. Rinaldi, Apportionment of Recovery Between Insured and Insurer in a Subrogation Case, 29 Tort & Ins. L.J. 803, 805 (1994).

[93] Id.

[94] Véase por ejemplo Rimes v. Sate Farm Mut. Auto Ins. Co., supra.

[95] Véase por ejemplo Rimes v. State Farm Mut. Auto Ins. Co., supra, en donde el Tribunal Supremo de Wisconsin resolvió

la doctrina aplica cuando hay una diferencia entre lo pagado por la aseguradora y la suma correspondiente al daño sufrido que está cubierto bajo la póliza por la cuál se pagó.

El segundo paso en la aplicación de esta figura es analizar qué ocurre cuando, en efecto, lo pagado por la aseguradora es menor al daño sufrido. Es decir, en caso de una subrogación parcial en la que tanto la aseguradora como el asegurado son titulares de parte del crédito original, hace falta determinar cuál será el orden de preferencia en la recuperación contra el tercero. Ya hemos visto que el artículo 1167 de nuestro Código Civil propone que el acreedor original tendría derecho a recuperar primero, a menos que se cruce de brazos o estorbe los derechos del acreedor subrogado. Pero también hemos visto que el artículo 1167 abarca situaciones generales de subrogación y no casos de seguros. Por tanto, con miras a analizar la compatibilidad entre dicho artículo y la doctrina de la indemnización completa, recurrimos nuevamente, en un ejercicio de derecho comparado, a la normativa vigente en las jurisdicciones de los Estados Unidos.[96]

---

que lo fundamental es determinar la totalidad de los daños sufridos independientemente de si solamente algunos son cubiertos por la póliza. Por otro lado, en Ludwig v. Farm Bureau Mut. Ins. Co., 393 N.W.2d 143 (1986), el Tribunal Supremo de Iowa expresamente rechazó el fallo de Rimes y resolvió que la doctrina solamente aplica en caso de que el pago hecho por la aseguradora no indemnice totalmente a su asegurado en cuanto a esa partida.

[96] En la medida que el derecho español ha optado por atender estos casos mediante legislación especial que desplaza la normativa del Código Civil, no habremos de examinarlo en

Si lo pagado por la aseguradora no cubre el daño sufrido por el asegurado, la doctrina y los tribunales estadounidenses están divididos en cuanto al remedio que debe otorgarse.[97] Según la doctrina, hay hasta cinco alternativas en estas situaciones. Según la primera, una vez la aseguradora se subroga, ésta es la única titular de la causa de acción y tiene derecho a hacer suya toda la cantidad recuperada del tercero. La segunda propone que la aseguradora subrogada cobre su partida primero y luego, del sobrante, se pague al asegurado. Como tercera alternativa, se puede prorratear lo recuperado en proporción a los créditos de ambas partes. En cuarto término, el asegurado puede cobrar su crédito primero y luego, del sobrante, se pagará a la aseguradora. Por último, se puede concluir que la víctima es la única titular de la causa de acción y le corresponde todo lo recuperado del tercero.[98]

Evidentemente la primera y quinta alternativas no tienen cabida en nuestro ordenamiento, porque parten de la imposibilidad de la subrogación parcial y la división del crédito. Los tribunales de las jurisdicciones de los Estados

---

detalle. Véase Artículo 43 de la Ley de Contratos de Seguro, RCL 1980, 2295.

[97] Rinaldi, Apportionment of Recovery, *supra*.

[98] Dado el hecho de que ninguna jurisdicción ha asumido ni la primera ni quinta alternativa, los tratadistas Keeton y Widiss proponen que, en efecto, solamente existen las restantes tres alternativas. R.E. Keeton & A.I. Widiss, Insurance Law, West Publishing Co., 1988, pp. 234-236.

Unidos se han dividido, mayormente, entre la segunda y cuarta alternativas.[99]

Finalmente, examinemos cómo el estado de Luisiana ha abordado controversias similares tomando como punto de partida su Código Civil, que contiene una disposición similar a la nuestra. En <u>Southern Farm Bur. Cas. Ins. Co. v. Sonneier</u>,[100] un Tribunal Supremo dividido resolvió que cuando concurren asegurador y asegurado, primero recupera éste totalmente y luego, de haber sobrante, recupera el asegurador. Al adoptar esta norma el Tribunal <u>recurrió a una interpretación del Código Civil de Luisiana y la jurisprudencia francesa</u>.[101] Según el alto foro estatal, se trata de una controversia de subrogación parcial y división del crédito, en donde el acreedor original tiene preferencia sobre el acreedor subrogado. Es decir, la decisión se basó

---

[99] Rinaldi, <u>Apportionment of Recovery</u>, *supra,* p. 806. La mayoría de las jurisdicciones han optado por la cuarta alternativa (Alabama, Arkansas, Carolina del Norte, Colorado, Connecticut, Florida, Illinois, Indiana, Iowa, Luisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nueva Jersey, Rhode Island, Tennessee, Texas, Utah, Vermont, Virginia Occidental, Washington y Wisconsin. La tendencia minoritaria ha optado por la segunda alternativa (California, Idaho, Nebraska, Ohio, Virginia y Wyoming). Véase, además, Roger M. Baron, <u>Subrogation: A Pandora's Box Awaiting Closure</u>, 41 S.D. L. Rev. 237, 253 (1996); <u>16 Couch on Insurance 3d</u>, *Op.Cit.*, p. 223-154.
     Por su parte, el derecho español opta por la tercera opción, es decir, la división a prorrata, mediante ley especial. Artículo 43 de la Ley de Contratos de Seguro, <u>RCL 1980, 2295</u>.

[100] 406 So.2d 178 (1981).

[101] En particular, el Tribunal citó el artículo 2162 del Código Civil de Luisiana, actualmente codificado en el artículo 1828, parecido a nuestro artículo 1167.

en la regla general de subrogación parcial del derecho civil.[102]

Consideradas las distintas alternativas, nos parece más afín con nuestro ordenamiento el que el asegurado, como acreedor original del crédito, tenga prelación sobre la aseguradora. Llegamos a esta conclusión por dos razones. En primer lugar, es evidente que cuando un asegurado recibe de su aseguradora un pago que no alcanza la totalidad de los daños cubiertos por la póliza se produce una división del crédito. Igualmente evidente es que, en esos casos, el asegurado es el acreedor original y la aseguradora es la acreedora subrogada. Dado que en Puerto Rico no hay ley especial en esta materia que desplace al artículo 1167 del Código Civil, ésta es la disposición legal aplicable. En segundo lugar, no podemos olvidar que el propósito de la doctrina de la indemnización completa es <u>proteger y favorecer a la víctima</u> y asegurarse que se le restituya a su estado original, en cuanto sea posible. Sería un sinsentido que una víctima asegurada que recibe de su aseguradora un pago que es menor a la totalidad de los daños sufridos quede en una posición más desventajosa que un acreedor ordinario bajo el artículo 1167.

Hemos visto que el artículo 1167 de nuestro Código Civil no distingue entre la subrogación legal y la convencional. En Estados Unidos, la doctrina de la

---

[102] Curiosamente, la disidencia en ese caso adoptó la división a prorrata del crédito, alternativa codificada en el derecho español.

indemnización completa en materia de seguro está dividida en cuanto a este asunto, aunque la mayoría coincide con la doctrina general española recogida en el artículo mencionado.[103] Esta tendencia, que coincide con la norma general española sobre subrogación, nos parece la más persuasiva en el contexto de nuestro derecho de seguros.

La doctrina estadounidense también está dividida sobre el efecto que pudiera tener sobre el derecho de subrogación de una aseguradora un acuerdo de transacción. Esto tiene mucha relación con la primera parte del análisis pertinente a la doctrina de indemnización completa que, como explicamos, requiere determinar la cuantía de los daños sufridos, pues en una transacción no hay determinación judicial de los daños ni estipulación vinculante que establezca una cantidad cierta. La primera interrogante es si una transacción, de por sí, determina automáticamente que el asegurado ha sido indemnizado totalmente por sus daños. La tendencia en los Estados Unidos se inclina hacia la negativa. En vez, se ha resuelto que se trata de una cuestión de hecho. Por consiguiente, le corresponde al

---

[103] En Ex parte State Farm Fire & Cas. Co., 764 So.2d 543 (2000), el Tribunal Supremo de Alabama resolvió que esta figura era modificable mediante contrato. A semejante conclusión llegó el Tribunal Supremo de Ohio en Peterson v. Ohio Farmers Ins. Co., 191 N.E.2d 157 (1963). En dicho caso, el alto foro estatal determinó que si la cláusula de subrogación en la póliza incluía un lenguaje abarcador mediante el cual la aseguradora se subrogaba en todos los derechos, ello derrota la doctrina de la indemnización completa. Otros estados han resuelto que esta doctrina no es modificable mediante contrato. Véase por ejemplo Eastwood v. Gelns Falls Ins. Co., 646 S.W.2d 156 (1983) y Wimberly v.

tribunal determinar si una transacción en particular es suficiente como para hacer inaplicable la doctrina de la indemnización completa. El hecho de la transacción en sí es insuficiente como cuestión de derecho.[104]

Ahora bien, según Couch, el elemento decisivo para determinar los derechos de la aseguradora es **si ésta fue parte de la transacción acordada**. Nos explica el tratadista que si el asegurado transigió con el tercero sin la participación de la aseguradora, los derechos de ésta no se afectan y podrá recuperar la totalidad de sus daños, salvo pacto en contrario. Si ambos cooperaron en la transacción y la razón por la cual acordaron una cuantía menor es el límite de la póliza de seguro del demandado o porque el demandado no tiene otra forma de pagar, la división será a prorrata. Si se ha pagado hasta el límite de la póliza y el asegurado y la aseguradora llegaron a una transacción con el causante de los daños que es menor que los daños sufridos por el asegurado, la aseguradora no podrá recobrar porque no ha logrado una compensación completa.[105] No obstante lo

---

American Casualty Co., 584 S.W.2d 200 (1979) (Tennessee); Rimes v. State Farm Mut. Auto Ins. Co., *supra* (Wisconsin).

[104] Complete Health v.White, 638 So.2d 784 (1994) (Alabama, revocado por otras razones en Ex parte State Farm Fire & Cas.Co., *supra*); Abbott v. Blount County, 207 S.W.3d 732 (2006) (Tennessee); Rimes v. State Farm Mut. Auto Ins. Co., *supra* (Wisconsin). Véase además 16 Couch on Insurance 3d, *Op.Cit.*, p. 223-175.

[105] El asunto de la participación de la aseguradora en las negociaciones y eventual acuerdo de transacción ha sido atendido por los tribunales de algunas jurisdicciones de los Estados Unidos. Véase por ejemplo Illinois Auto. Ins. Exch. v. Brown, *supra* (Pennsylvania); Morgan v. General Ins. Co.,

anterior, <u>si el acuerdo de transacción incluye una partida específicamente destinada a la aseguradora por el pago que haya realizado</u>, **ésta tendrá derecho a recuperarla**.[106]

En vista de lo anterior, resolvemos que la doctrina de la indemnización completa, según ha sido discutida en esta Opinión, es compatible con el artículo 1167 del Código Civil y con nuestro derecho de seguros. Examinemos ahora los hechos del caso de autos a la luz de esa doctrina.

El Grupo Marcelino sufrió daños al desplomarse el techo del almacén que arrendó a CODECO. Integrand emitió un pago ascendente a $596,595, a favor del Grupo Marcelino, por concepto de la propiedad destruida por el desplome. El Grupo Marcelino alegó que su pérdida por dicho concepto superó esa cantidad y que el evento le causó otros daños, además de la pérdida de la propiedad. Por tanto, argumentó que no fue indemnizado completamente, primeramente porque Integrand pagó menos de la totalidad de los daños sufridos producto de la pérdida de la propiedad y, en segundo lugar, porque el Grupo Marcelino sufrió otros daños adicionales a esa partida. Alega entonces que la cantidad de $560,000 que fue retenida por ACE en el acuerdo de transacción le pertenece,

---

181 So.2d 175, 178-179 (1965) (Florida); <u>Ludwig v. Farm Bureau Mut. Ins. Co.</u>, *supra* (Iowa).

[106] <u>16 Couch on Insurance 3d</u>, *Op.Cit.*, p. 223-110; <u>North River Ins. Co. v. McKenzie</u>, 74 So.2d 599 (1954) (Alabama); <u>Ludwig v. Farm Bureau Mut. Ins. Co.</u>, *supra* (Iowa); <u>Voss v. Mike and Tony's Steakhouse</u>, 230 So.2d 470 (1969) (Luisiana); <u>Ortiz v. Great Southern Fire & Casualty Ins. Co.</u>, 597 S.W.2d 342 (1980).

ya que lo pagado por Integrand más lo pagado por ACE no cubre la totalidad de sus daños.

En primer lugar, no sabemos hasta cuánto ascienden los daños sufridos por el Grupo Marcelino pues no ha habido sentencia judicial o estipulación vinculante a todas las partes sobre esto. Por tanto, resulta imperativo determinar si los daños causados exceden los $596,595 pagados por Integrand y si esta cantidad es menor a la cubierta de la póliza en virtud de la cual se hizo el pago. De ser esa la realidad, aplica la doctrina de la indemnización completa. No podemos, sin embargo, obviar que en este caso hubo una transacción,[107] en la cual la aseguradora no participó, **y que en el mismo acuerdo se separó una cantidad específica de fondos para satisfacer a Integrand por el pago realizado, en caso de que la aseguradora tuviera éxito en su demanda de subrogación**. Como hemos visto, ambas circunstancias, por sí solas, serían suficientes para facultar a la aseguradora a cobrar la totalidad de su pago. Pero aun más, ambas circunstancias constituyen excepciones reconocidas a la doctrina de la indemnización completa. Por eso, si Integrand logra probar la razón de su demanda, tendría derecho a los $560,000 retenidos por ACE.

---

[107] Si hubiera recaído una sentencia judicial que estableciera los daños y el pago de la aseguradora fuera menor a ésta, el Grupo Marcelino tendría prelación frente a Integrand y su crédito sería satisfecho primero. Si tras compensársele completamente por sus daños hubiera un sobrante, entonces le correspondería a Integrand cobrar su crédito.

En cuanto a la alegación de Integrand, de que procede la resolución sumaria de este pleito, cabe destacar que aun no se ha determinado la negligencia de CODECO, ni que dicha negligencia fue la causa de los daños sufridos por el Grupo Marcelino. De igual forma, nada en el acuerdo de transacción permite concluir que CODECO o ACE admitieron su responsabilidad. Más bien, en su contestación a la demanda de subrogación, ambos negaron toda responsabilidad por el desplome del techo. Por tanto, hay una controversia genuina sobre hechos materiales que debe ventilarse en sus méritos. En conclusión, la alegación de Integrand es inmeritoria.

Por los fundamentos expuestos anteriormente, se confirma la Sentencia del Tribunal de Apelaciones, y se devuelve el caso al Tribunal de Primera Instancia para la continuación de procedimientos consistentes con esta Opinión.

Se dictará sentencia de conformidad.


Liana Fiol Matta
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Integrand Assurance Company<br>Peticionaria<br><br>v.<br><br>Codeco, Cigna Insruance Co., Jonh Doe, Richard Doe, Compañía de Seguros X, Y y Z<br>Recurridos<br>_____<br>Marcelino Fernández Corp., Newport Cold Storage, Inc., Food Services, Inc., Frozens, Inc., Fronda, Inc.<br>Demandantes-Interventores y Apelantes, ahora Apelada<br><br>v.<br><br>Integrand Assurance Co., Codeco (hoy Promoexport) y Cigna Insurance Company (hoy Ace Insurance Co.)<br>Demandados-intervenidos y Apelante la Segunda, ahora Apelada y Apelante la primera | AC-2010-98<br><br><br><br><br><br>cons. con |
| Integrand Assurance Company<br>Recurrido<br><br>v.<br><br>Codeco, Cigna Insruance Co., Jonh Doe, Richard Doe, Compañía de Seguros X, Y y Z<br>Peticionarios<br>_____<br>Marcelino Fernández Corp., Newport Cold Storage, Inc., Food Services, Inc., Frozens, Inc., Fronda, Inc.<br>Demandantes-Interventores y Peticionarios<br><br>v.<br><br>Integrand Assurance Co., Codeco (hoy Promoexport) y Cigna Insurance Company (hoy Ace Insurance Co.)<br>Demandados-intervenidos y Peticionarios | CC-2010-1027 |

*SENTENCIA*

En San Juan, Puerto Rico, a 28 de marzo de 2012.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se confirma la Sentencia del Tribunal de Apelaciones, y se devuelve el caso al Tribunal de Primera Instancia para la continuación de procedimientos consistentes con esta Opinión.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Martínez Torres concurre con el resultado y expresa lo siguiente:

> Estoy conforme con el resultado al que se llega sobre la doctrina de la anti-subrogación. Sin embargo, es improcedente la discusión sobre la doctrina de la indemnización completa. El Grupo Marcelino trajo por primera vez esa teoría ante el Tribunal de Apelaciones. No la presentó ante el foro primario. Es norma de derecho apelativo que "este Tribunal, no considerará cuestiones que no fueron planteadas por las partes ni consideradas por el tribunal inferior". Murcelo v. H.I. Hettinger & Co., 92 D.P.R. 411, 426 (1965). Claro está, esa norma no es un "dogma inquebrantable". E.L.A. v. Northwestern Selecta Inc., Op. de 27 de marzo de 2012, 2012 T.S.P.R. __, 2012 J.T.S.__, 184 D.P.R. __ (2012). Aunque en ciertas ocasiones hemos permitido que una parte modifique su teoría del caso en apelación, este no es el escenario para permitir la excepción. *Íd.*

El Juez Presidente señor Hernández Denton y el Juez Asociado señor Rivera García concurren con el resultado sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo